HAVANA DOCKS CORPORATION,

      Plaintiff,

v.

MSC CRUISES SA CO, and
MSC CRUISES (USA) INC.,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants MSC Cruises SA Co. and MSC Cruises (USA) Inc.'s (together, "Defendants") Motion to Dismiss, ECF No. [24] ("Motion"). Plaintiff Havana Docks Corporation ("Havana Docks" or "Plaintiff") filed a Response, ECF No. [34] ("Response"), to which Defendants filed a Reply, ECF No. [39] ("Reply"). The Court has carefully considered the Motion, the Response and Reply, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I.    BACKGROUND

On August 27, 2019, Havana Docks filed this action against Defendants pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "LIBERTAD Act" or "Act"). ECF No. [1] ("Complaint"). "One of the LIBERTAD Act's purposes is to 'protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime.'" *Id.* ¶ 7 (citing 22 U.S.C. § 6022(6)).

Plaintiff is a United States national as defined by 22 U.S.C. § 6023(15). *Id.* ¶ 8. In the Complaint, Plaintiff alleges that it is the rightful owner of an interest in, and claim to, certain

commercial waterfront real property in the Port of Havana, Cuba, identified as the Havana Cruise Port Terminal ("Subject Property"). *Id*. Plaintiff claims that it owned the Subject Property until the Cuban Government confiscated it in 1960. *Id*. ¶¶ 9-10. Plaintiff further alleges that since its confiscation, the Subject Property has not been returned and adequate and effective compensation has not been provided. *Id*. ¶ 11. Plaintiff's ownership interest in and claim to the Subject Property has been certified by the Foreign Claims Settlement Commission ("Commission") under the International Claim Settlement Act of 1949. *Id.* ¶ 13.

According to the Complaint, on or about December 10, 2018, Defendants "knowingly and intentionally commenced, conducted, and promoted their commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking their passengers on the Subject Property without the authorization of Plaintiff or any U.S. national who holds a claim to the Subject Property. *Id*. ¶ 14. At that time, Defendants participated in and profited from the communist Cuban Government's possession of the Subject Property without Plaintiff's authorization. *Id*. ¶ 15. Plaintiff claims that Defendants' knowing and intentional conduct with regard to the confiscated Subject Property is "trafficking" as defined in 22 U.S.C. § 6023(13)(A), and Defendants are liable to Plaintiff for all money damages allowed by statute. *Id*. ¶¶ 16-17.

Defendants have now moved to dismiss the Complaint under Rule 12(b)(6).

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s

pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). Although the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

In their Motion, Defendants argue that the Complaint should be dismissed for four reasons: 1) Plaintiff fails to include sufficient allegations regarding Defendants' alleged trafficking in Plaintiff's property and impermissibly groups both Defendants together; 2) Plaintiff's claim of trafficking fails as a matter of law; 3) Title III of the LIBERTAD Act violates the Due Process Clause of the Fifth Amendment; and 4) Title III's remedy provision violates the Due Process Clause. Because the Court finds the second issue to be dispositive, the Court considers it first.

Defendants argue that Plaintiff's "property" as defined in the LIBERTAD Act is not at issue in the Complaint because Plaintiff's property interest in the Subject Property is a leasehold that expired in 2004. As such, Defendants reason that Plaintiff can only assert claims under Title III for trafficking that allegedly took place prior to the expiration of Plaintiff's leasehold in the Subject Property. The Defendants correctly point out that the Complaint does not allege that the Defendants ever trafficked in, profited from, or infringed upon the confiscated leasehold interest which expired in 2004. In response, Plaintiff argues that the Court has already considered and rejected the same argument made previously by Carnival Corporation in a related case. *See Havana Docks Corp. v. Carnival Corp.*, Case No. 19-cv-21724, ECF No. [47]. The Court in *Carnival* agreed with Plaintiff that the interpretation suggested by Carnival (and Defendants here) conflates a claim to a property and a property interest. *Id*. However, upon further review and analysis, the Court reconsiders its previous interpretation of the statute given the time-limited nature of Plaintiff's claim, a fact not in dispute.

"The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *U.S. v. Silva*, 443 F.3d 795, 797-98

(11th Cir. 2006) (internal quotations omitted). "This is so because '[t]he plain language is presumed to express congressional intent and will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *U.S. v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) (alterations in the original)). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And, "[w]hen interpreting a statute, words must be given their 'ordinary or natural' meaning[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) (citation omitted). In any event, "[a] court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Moss*, 378 B.R. at 658 (quoting *Silva*, 443 F.3d at 798). With these concepts in mind, the Court considers Defendants' argument.

The Act defines "property" broadly as "any property . . . whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12)(A). The plain language of the LIBERTAD Act states that "any person . . . that traffics in property that was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to *such* property." 22 U.S.C. § 6082(A) (emphasis added). Thus, for example, if the interest at issue is a leasehold, following the plain language of the statute, a person would have to traffic in the leasehold in order for that person to be liable to the owner of the claim to the leasehold.

In this case, Plaintiff does not dispute that the property interest at stake is a concession that expired in 2004. *See* ECF No. [24-1] ("The terms of the concession granted by the Cuban Government were to expire in the year 2004, at which time the corporation had to deliver the piers to the government in good state of preservation."). Accordingly, the property interest in this case is time-limited by its terms, and the claim that Plaintiff owns is a claim covering the time-limited

interest, which expired in 2004. *Id.*[1] Indeed, although "claim" is not a term defined in the statute, the certification by the Commission relates only to the specific interest held by a particular party—"the court shall accept as conclusive proof of ownership of *an* interest in property a certification of a claim to ownership of *that* interest that has been made by the . . . Commission . . . ." 22 U.S.C. § 6083(a)(1). Any other interpretation of the Act would require the Court to ignore the definition of "property," and the qualifying words "such" and "that" out of the liability imposing language and conclusiveness of certified claims language, respectively—which would run afoul of basic canons of statutory interpretation. As a result, Plaintiff's claim can only extend as far as its property interest at the time of the Cuban Government's wrongful confiscation.

This interpretation is also in keeping with fundamental principles of property, which view property as a "bundle of rights." *United States v. Shotts*, 145 F.3d 1289, 1296 (11th Cir. 1998). Under this formulation, a person's interest in property can only extend as far as the particular right from the bundle that the person has acquired. The context of takings is instructive here. For example, if the government takes a person's property, be it a fee simple or lease, the government must pay just compensation for the interest that has been taken. *United States v. Gen. Motors* Corp. 323 U.S. 373, 382 (1945). Thus, if a person has a lease, that person is entitled to the value of the lease during its applicable term. *Id.* ("When [the government] takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, *not more . . . .*") (emphasis added); *see also Alamo Land & Cattle Co., Inc. v. Arizona*, 424 U.S. 295, 304 (1976) ("The measure of damages is the value of the use

---

[1] This is consistent with the International Claims Settlement Act of 1949, 22 U.S.C. § 1643, *et seq.*, which empowered the Foreign Claims Settlement Commission ("Commission") to certify the amount and validity of claims "for losses resulting from the nationalization, expropriation, intervention, or other taking of . . . property including any rights or interests therein owned wholly or partially, directly or indirectly *at the time* by nationals of the United States . . . ." 22 U.S.C. § 1643b(a) (emphasis added). Here, the property interest held by Plaintiff at the time was a time-limited concession that by its own terms expired in 2004.

and occupancy of the leasehold *for the remainder of the tenant's term* . . . .") (quoting *United States v. Petty Motor Co.*, 327 U.S. 372, 381 (1946)) (emphasis added). As a result, reading the Act in the manner suggested by Defendants is consistent with established principles of property law.

Plaintiff's argument suggests that the plain language of the Act provides a cause of action to the owner of any claim to confiscated property regardless of when the trafficking took place. However, accepting Plaintiff's argument would ignore the fact that the claim in this case is limited by its own terms as the claim relates to nothing more than the time-limited concession Plaintiff had at the time the property was confiscated by the Cuban Government. Plaintiff also contends that Defendants' interpretation disregards that expropriation extinguished all property rights previously held by victims of Castro's confiscation. However, this contention does not withstand scrutiny. First, Defendants do not appear to dispute that the Cuban Government's confiscation extinguished Plaintiff's property rights, which is consistent with case law. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 414-15 (1964) (determining that confiscation by Cuba "constituted an effective taking of the sugar, vesting in Cuba [the] property right in it."); *see also Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1269 (S.D. Fla. 2005) ("Titles III and IV of the Helms-Burton Act[] do not provide that those whose property was taken by the Cuban Government retain *legal title* to that property. Rather, Title III permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property.'") (citation omitted) (emphasis in original), *aff'd*, 450 F.3d 1251 (11th Cir. 2006). Second, it is not necessary to find that there is retention of any property rights for the statute to have meaning in its application. Third, applying the interpretation suggested by Plaintiff would lead to impermissibly broadening Plaintiff's property rights.

Even though there is no identified fee simple owner and it appears that the property reverted to the Cuban Government by the terms of the concession itself, Plaintiff's claim involving a time-limited concession nevertheless does not give Plaintiff the right to sue for activities that took place years after it no longer has an interest in the property. A broader interpretation would in effect give Plaintiff additional rights from the bundle to which it is not otherwise entitled. This reading is further bolstered in the statute, where it specifies that "[a]n interest in property for which a United States national has a claim certified . . . may not be the subject of a claim in an action under this section by any other person." 22 U.S.C. § 6082(a)(5)(D).

Moreover, the interpretation suggested by Plaintiff does not align with the Act's definition of "trafficking," which is defined in pertinent part as follows:

> As used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property if that person knowingly and intentionally—
>
> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,
>
> without the authorization of any United States national who holds a claim to the property.
>
> 22 U.S.C. § 6023(13)(A).

Thus, Defendants could only "traffic" in Plaintiff's confiscated property if they undertook one of the prohibited activities before Plaintiff's interest in the property expired. Otherwise

Defendants are "trafficking" in confiscated property for which someone else would properly own a claim. Plaintiff's claim certifies only a time-limited concession. Finally, the interpretation suggested by Defendants does not require that the Court ignore the purposes of the Act. "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940). The Act seeks to deter trafficking and provide a remedy for such trafficking, but only as against rightful owners:

> This "trafficking" in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus undermines the foreign policy of the United States—
> [. . .]
> to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government.
> [. . .]
> The international judicial system, as currently structured, lacks fully effective remedies for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property.

22 U.S.C. § 6081(6)(B), (8). However, there is nothing to suggest that Congress intended to grant victims of property confiscations more rights to the property than they would otherwise have simply by virtue of the confiscation. Plaintiff is the rightful owner only of a time-limited concession that expired in 2004. Interpreting the statute in this manner does not deprive Plaintiff of a remedy for trafficking. Rather, it ensures that persons like Plaintiff may recover for any trafficking of their confiscated property, which in this case is a concession that but for the Cuban Government's confiscation in 1960 would have been Plaintiff's concession to enjoy until 2004. Thus, if Defendants' alleged activities had taken place between 1960 and 2004, they would have "trafficked" in Plaintiff's confiscated property under the Act. However, because there is no dispute

that Defendants' allegedly unlawful conduct began in 2018, they did not traffic in Plaintiff's confiscated property.

As a result, Plaintiff fails to state a claim for trafficking under Title III as a matter of law, and the Court does not consider Defendants' remaining arguments.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion, **ECF No. [24]**, is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida on January 3, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record