IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-23588-BLOOM/Louis

HAVANA DOCKS CORPORATION,

*Plaintiff*,

v.

MSC CRUISES (USA) INC.
MSC CRUISES SA CO., and
MSC CRUISES S.A.

*Defendants*.

## DECLARATION OF CAPTAIN LUIGI PASTENA IN SUPPORT OF MSC CRUISES' INDIVIDUAL MOTION FOR SUMMARY JUDGMENT

1. My name is Luigi Pastena. I am over the age of 18 and am competent to make this declaration. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently to the matters set forth below.

2. I served as a ship captain from 1983 until 2003, then as Port Captain at MSC Cruises Technical Department from February 2003 through May 2016, and as Vice President of Port Operations for MSC Cruise Management (UK) Ltd. from June 2016 until September 2020. In my role as Port Captain and as Vice President of Port Operations, I was responsible for evaluating and coordinating port locations throughout the world for MSC Cruises' cruise operations.

3. In connection with my work at MSC Cruises, I traveled to Havana, Cuba multiple times in 2015 to inspect and evaluate possible port locations for MSC Cruises' ships and to discuss operating cruise vessels in Havana with Aries Transportes S.A., the operator of Havana ports, and representatives of the Cuban Government.

4. In particular, the Cuban Ministry of Transportation and Aries S.A. determine where a ship can anchor or dock in Havana, Cuba.

5. Since at least 2015, the smallest ships in MSC Cruises' fleet—the Lirica Class vessels—had a length overall (LOA) of approximately 275 meters. The *MSC Armonia* was one of those vessels.

6. During my review in 2015, I evaluated the maritime specifications of major ports in Cuba, with particular consideration given to the length of MSC Cruises' smallest vessels. The only Cuban port to which MSC Cruises' ships could travel due to their size was within the Bay of Havana. Even MSC's smallest vessels (Lirica Class) could not safely or feasibly navigate into the channels at Cienfuegos or Santiago de Cuba.

7. Within the Bay of Havana, the Cuban Government mandated that MSC Cruises' ships exclusively sail to, disembark and embark passengers at the San Francisco Pier (Pier No. 1) of the Sierra Maestra Terminal (or "Havana Cruise Port Terminal" as it was referred to by Aries).

8. In 2015, I worked with a man named Wim Welvaarts, who was a Terminal Infrastructure Manager for TIL Group Ltd. TIL Group is a Netherlands-based affiliate of MSC Cruises that develops and operates commercial container ports. In May and June 2015, Mr. Welvaarts and I inspected two port locations in Havana: the Havana Cruise Port Terminal and the Havana Container Terminal ("TCH").

9. The Havana Cruise Port Terminal only had one operational pier, Pier No. 1. We prepared an inspection report and noted that MSC Cruises' preference was to have constructed an additional mooring point in the water (known as a "breasting dolphin"). This was because MSC Cruises' smallest vessels stuck out more than 80 meters beyond the end of Pier No. 1. *See* MSC Cruises MSJ ("MSJ") Exhibit 46.

10. Unlike the Havana Cruise Port Terminal, the TCH had a longer pier, but it did not have any structures or facilities for the passenger processing mandated by the Cuban government, such as customs, immigration, and medical screenings. Because of the lack of facilities, the TCH was not a viable long-term option for a passenger cruise to dock.

11. In June 2015, I met in-person in Havana, Cuba with Cuban Government officials, including Aries Director-General Norberto Perez and personnel from the Ministry of Transportation. These officials were presented to me as those charged with exclusive authority over the ports. These officials personally told me that MSC Cruises would only be allowed to use the Havana Cruise Port Terminal to offload passengers. I asked the Cuban Government Officials whether MSC Cruises could use the TCH as a temporary solution until a breasting dolphin at the Havana Cruise Port Terminal could be constructed, and I also proposed the construction of a temporary, large passenger tent or similar enclosure at the TCH. *See* MSJ Exhibit 47 at 1, 4, 8-10.

12. The Cuban Government did not immediately respond. On July 1, 2015, I traveled again to Havana, Cuba—along with Mr. Giovanni Onorato (CEO of MSC Cruises S.A.) and my colleague Captain Pier Paolo Scala—to discuss feasibly berthing at Pier No. 1 of the Havana Cruise Port Terminal *without* a dolphin. We met Cuban Government officials, including Director Perez at the Havana Cruise Port Terminal. I prepared a technical presentation showing how MSC Cruises' Lirica Class vessels could maneuver and dock safely with or without a breasting dolphin. *See* MSJ Ex. 50.

13. After that meeting, Director Perez informed me of the Cuban Government's decision to permit MSC Cruises' vessel to sail only to Pier No. 1 of the Havana Cruise Port Terminal on the port-side, head-in. That same day, Aries and port agent Mapor S.A. informed me

by email that Aries had authorized all of MSC Cruises' proposed berthing dates in Havana for the 2015 and 2016 seasons.  *See* MSJ Ex. 42 at 2-3.

14.     On behalf of MSC Cruises S.A., I began discussing a contract with Aries S.A. which authorized MSC Cruises to use Pier No. 1 of the Havana Cruise Port Terminal for each of its scheduled berthing dates for the upcoming seasons.

15.     The Cuban Government required that every time an MSC Cruises vessel sailed into Havana, the Cuban port agent would have a pilot board the vessel to participate in the docking maneuver at Pier No. 1.  I was responsible for and personally trained a number of Cuban pilots regarding how MSC Cruises' vessels would maneuver into the docking position at Pier No. 1 of the Havana Cruise Port Terminal.

16.     MSC Cruises S.A. was never authorized to sail to the TCH.  But even if the Cuban Government had provided us with such an authorization, no passenger tent or facility was ever constructed at the TCH to my knowledge which would have potentially enabled the Cuban Government to conduct required passenger processing, such as customs, immigration or medical screenings.

17.     The Cuban Government informed MSC Cruises that anchoring offshore outside or within the Bay of Havana and transporting passengers to Havana by tender boat was prohibited.

18.     In addition, it would not be possible or safe to anchor outside the Bay of Havana and transport hundreds or thousands of passengers into the Bay of Havana by small tender boats. That is a time-consuming process and large commercial vessels travel in and out of the channel every day, causing choppy waters that are not ideal for safely operating cruise ship tender boats.

19.     Moreover, even if MSC Cruises' ships had been allowed to anchor in the Bay of Havana and tender passengers to shore, it would have been necessary to use the Havana Cruise

4

Port Terminal because it was the only place in Havana to offload passengers in a location that had the passenger processing facilities mandated by the Cuban Government, such as for customs, immigration, and medical screening.

20. Therefore, docking at Pier No. 1 of the Havana Cruise Port Terminal was the only way for MSC Cruises to sail to Cuba and to Havana.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this  18   day of September, 2021

_____
Luigi Pastena