# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 19-23588-CIV-BLOOM/LOUIS

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

MSC CRUISES S.A.,
MSC CRUISES S.A., CO.
MSC CRUISES (USA), INC.

    Defendants.
_____/

## MSC CRUISES' OPPOSING STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants MSC Cruises S.A., MSC Cruises SA Co., and MSC Cruises (USA) Inc. (collectively, "MSC Cruises") pursuant to Local Rule 56.1, respond to Plaintiff's statement of material facts as follows.

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Undisputed.
5. Undisputed.
6. Undisputed.
7. Undisputed.
8. Undisputed.
9. Undisputed.
10. Undisputed.
11. Undisputed.
12. Undisputed.
13. Undisputed.
14. Undisputed.
15. Undisputed.
16. Undisputed.
17. Undisputed.
18. Undisputed.
19. Undisputed.
20. Disputed as phrased.[1]  Undisputed that MSC Cruises (USA) Inc. marketed and sold tickets for U.S.-to-Cuba cruises on the Armonia between December 2018 and June 2019 that docked at the Havana Port Terminal.  *See* ECF No. 201-1, at 134:4-138:25, 141:17-24, 157:8-160:5; ECF

---

[1] MSC Cruises interprets the undefined term "Havana Port Terminal" to mean the Havana Cruise Port Terminal, which is also known as the Sierra Maestra Terminal (the "Terminal") as used by MSC Cruises in its Omnibus Motion for Summary Judgment and Statement of Material Facts Not in Dispute (*see* ECF Nos. 216, 217), and will apply that definition throughout.

No. 218-4, at 52 (RFA No. 130). However, MSC Cruises clarifies that MSC Cruises (USA) Inc. did not market or sell tickets for—and, in fact, was prohibited by MSC Cruises S.A. from having any involvement with—cruises to Cuba that did not travel to or from the United States. *See* ECF No. 201-1 at 188:18–189:10; ECF No. 201-3 at 162:8–164:12, 165:5-8, 166:2-167:9 (Cuba-Cuba "cruises ha[ve] never been authorized to be sold in US by our MSC USA Inc. organization.").

   21.   Undisputed.

   22.   Undisputed.

   23.   Undisputed.

   24.   Undisputed.

   25.   Disputed. *See* ECF No. 201-6 at 26:23-27:14 (as MSC Cruises S.A.'s representative, Mio testified that "we got to know about the Libertad Act in early 2019."); ECF No. 201-3 at 51:22–52:25 (Onorato testified that he was aware of the LIBERTAD Act "before" sailing to Cuba, however, he was "not aware" of the purpose or effect of the Act); ECF No. 201-1 at 7:14-17 (Sasso employed by MSC Cruises (USA) Inc., not S.A.), 134:9–135:7 (MSC Cruises (USA) Inc. "did not get involved in any of" the cruise operations or use of the Terminal), 159:1-18 (same), 262:5–263:4 (same).

   26.   Undisputed.

   27.   Undisputed.

   28.   Disputed as phrased. Undisputed that MSC Cruises (USA) Inc. and MSC Cruises S.A. Co. received the Margol Letter on February 11, 2019. Undisputed that MSC Cruises S.A. received the Margol Letter from its U.S. subsidiary either on February 11, 2019 or shortly thereafter, however, prior to receiving the Margol Letter, MSC Cruises S.A. was not aware of the existence of HDC or the Certified Claim, nor was it aware that the Terminal had allegedly been confiscated by the Cuban Government. *See* ECF No. 201-6 at 44:13–46:7, 56:25-57:3; ECF No. 201-3 at 57:13-14 ("We never heard of your client until the receipt of this letter [i]n February 2019."); ECF No. 201-4 at 49:20-22.

   29.   Undisputed.

   30.   Undisputed.

   31.   Disputed as phrased. HDC has not pleaded a theory based on any uses of the Havana Port Terminal other than in connection with U.S.-to-Cuba cruises. Therefore, this is not a "material" fact to HDC's motion for summary judgment to the extent it relates to cruise activity other than U.S.-

to-Cuba cruises.[2]

32.   Disputed as phrased. Moreover, this is not a "material" fact to HDC's motion for summary judgment except with respect to U.S.-to-Cuba cruises. Undisputed that MSC Cruises never requested or obtained the authorization of HDC to use the Havana Port Terminal to dock its ships and embark and disembark passengers. *See* ECF No. 218-4, at 6-9 (RFA Nos. 10-17); ECF No. 201-1, at 52:21-53:4; ECF No. 201-3, at 60:14-20; ECF No. 201-6, at 70:14-71:10. However, MSC Cruises clarifies that (a) MSC Cruises' use of the Havana Port Terminal was authorized by the United States Government and the Cuban Government, and (b) Havana Docks had no authority to approve any use of the Havana Port Terminal. *See* 80 Fed. Reg. 56916; 31 C.F.R. § 515.572(a)(2)(i); 80 Fed. Reg. 56,898; 15 C.F.R. § 740.15 and § 746.2 (the "General Licenses"); ECF No. 210-41, (MSCCUSA0000080596 at 596 (emailing Aries that "Captain Pastena told me . . . that MSC Cruises has obtained the permit to dock in Sierra Maestra [Pier No. 1]"); ECF No. 210-42, MSCCUSA0000079326 (email from Aries confirming berth requests at the Terminal for MSC vessels for 2016-2017); ECF No. 210-44 (7/14/17 email from Aries intending to confirm MSC Cruses S.A.'s berth requests "from now until March 2020"); ECF No. 212-17, MSCSA0000000048 at 49 (2015 contract between MSC Cruises S.A. and Aries for Aries to "guarantee the conditions" so that MSC Cruises S.A. can "operate . . . the complete itinerary [o]n the Cruise Terminal of Havana"); ECF No. 212-12 at 29:21-22 ("Havana Docks . . . lost its commercial property in 1960").

33.   Disputed. The U.S.-to-Cuba cruises—and MSC Cruises' use of the Havana Port Terminal in connection therewith—were authorized by General Licenses issued by OFAC. *See* the General Licenses; ECF No. 201-6 at 68:6-13 (general licenses "allow[ed] MSC Cruises to bring passengers from the US to Cuba"); 74:1-3, 106:2-3; ECF No. 201-3 at 46:18-24 ("OFAC general license" gave MSC Cruises S.A. "the opportunity to travel . . . to Cuba . . . according to a specific program called the people-to-people"); ECF No. 201-4 at 41:24–42:1 ("[W]e relied on a very clear OFAC license that was allowing us to operate into Cuba."). To the extent this fact refers to cruises that started from and returned to Havana and did not travel to the United States ("Cuba-to-Cuba Cruises"), this is not a "material" fact to HDC's motion for summary judgment except with respect to U.S.-to-Cuba cruises. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ. No authorization from the U.S. Government is required for cruises that do not travel to or from the

---

[2] This objection is hereinafter referred to as "MSC Cruises' Objection to Pleading a New Theory Through a Motion for Summary Judgment ("MSJ")."

United States or include any stops in the United States.

    **34.**    Undisputed.

    **35.**    Disputed as phrased. Undisputed that between 2015 and 2019, the Opera docked at the Havana Port Terminal to embark and disembark passengers in Havana in connection with Cuba-to-Cuba Cruises. *See* ECF No. 218-4, at 28-30 (RFA Nos. 74-79), at 31 (RFA No. 81); ECF No. 201-6, at 134:13-135:17; ECF No. 201-5, at 49:4-49:18.

    **36.**    Undisputed.

    **37.**    Undisputed. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

    **38.**    Undisputed. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

    **39.**    Disputed as phrased. Undisputed that the Opera homeported in Havana at the Havana Port Terminal from 2015 through March 2019 in connection with Cuba-to-Cuba Cruises, and that this overlapped with the Armonia's U.S.-to-Cuba cruises. *See* ECF No. 201-6 at 19:25-24:11; ECF No. 218-16 at 2; ECF No. 218-15 at 2-3. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

    **40.**    Undisputed.

    **41.**    Undisputed. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

    **42.**    Undisputed.

    **43.**    Undisputed.

    **44.**    Undisputed.

    **45.**    Undisputed, however, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

    **46.**    Undisputed, however, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

    **47.**    Undisputed.

**48.** Disputed as phrased. Undisputed that from December 2018 through June 2019, a total of 51,908 passengers are listed on the manifests as having embarked on a cruise from Miami to Havana by the Armonia. *See* ECF No. 218-4 at 17-18 (RFA No. 44).

**49.** Undisputed. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

**50.** Undisputed. However, shore excursions offered in Havana to passengers on cruises by the Opera and on cruises by the Armonia prior to December 10, 2018—none of which sailed to or from the United States—are not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

**51.** Disputed as phrased. Disputed that MSC Cruises S.A. entered into contracts with Aries for any of its ships to dock at any "other Cuban ports" besides the Havana Port Terminal. MSC Cruises S.A.'s contracts with Aries in connection with the Armonia's U.S.-to-Cuba cruises were only for the Armonia to dock at the Havana Port Terminal. *See* ECF No. 218-4, at 41 (RFA No. 105); ECF No. 202-31, at MSCCUSA0000079403–420; ECF No. 201-6 at 158:5–160:22. To the extent that HDC refers to certain contracts with Aries that also permitted MSC Cruises S.A. to sail to Punta Frances, Isla de la Juventud, MSC Cruises clarifies that (a) those contracts were entered into in connection with Cuba-to-Cuba Cruises, which are not material to the trafficking theory that HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba, *see* MSC Cruises' Objection to Pleading a New Theory Through MSJ, and (b) Punta Frances is not a "port," but rather is an isolated beach destination. *See* ECF No. 201-6 at 77:2-4; ECF No. 201-5 at 12:6-10; ECF No. 201-3 at 28:16-18.

**52.** Disputed as phrased. Undisputed that MSC Cruises S.A. entered into contracts with Mapor, however, Mapor served as MSC Cruises' port agent in Havana. *See* ECF No. 218-4, at 44 (RFA No. 114); ECF No. 201-6, at 145:2-11 ("We had an agreement . . . with Mapor, which was, let's say, our side's port agent"); ECF No. 201-8 at 65:6-7 ("Mapor is a private agency.").

**53.** Undisputed.

**54.** Undisputed.

**55.** Disputed as phrased. Undisputed that between February 7, 2017 and June 28, 2019, MSC Cruises S.A. paid Mapor at least $9,314,386.41 related to Mapor's services as ship agent for MSC Cruises S.A. and for use of the Havana Port Terminal. *See* ECF No. 218-3 at 7–8 (Interrog.

C); ECF No. 218-2 at 28–41 (Appendix A to Supp. Resp. to Interrogs. 3(l), 5, and 6); ECF No. 218-4 at 43-44 (RFA No. 111). Disputed that MSC Cruises S.A paid Mapor for the use of any "other port in Cuba." *See* ECF No. 201-6 at 146:16-21 ("[T]he contract with the port agent was not specific to Sierra Maestra, although, of course, it was only used for our operations in Sierra Maestra because we had no other operations."). Indeed, MSC Cruises S.A. never operated cruises to any "other port in Cuba." *See* ECF No. 210-38 at ¶ 6 ("The only Cuban port to which MSC Cruises' ships could travel due to their size was within the Bay of Havana."); ECF No. 201-3 at 85:18–87:7, 113:13–114:14 (Aries told Onorato that "Havana was the only option" due to "the size of that ship"), 142:4-12; ECF No. 201-8 at 77:25–78:2 ("There is no other port in Cuba that can attend [a] vessel the size of the MSC vessel[s]."), *id.* at 133:2-18 (same); ECF No. 201-6 at 114:17–116:5 (same). The only other destination in Cuba besides Havana to which MSC Cruises ever sailed was Isla de la Juventud (Punta Frances), which is not a "port." *See* ECF No. 201-6 at 77:2-4; ECF No. 201-5 at 12:6-10; ECF No. 201-3 at 28:16-18. Moreover, the only cruises on which MSC Cruises sailed to Punta Frances were Cuba-to-Cuba Cruises, which are not material to the trafficking theory that HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

56. Disputed as phrased. Undisputed that MSC Cruises S.A. contracted with Cubanacan to operate shore excursions in Havana that MSC Cruises S.A. sold to passengers on the MSC Armonia in connection with U.S.-to-Cuba cruises. *See* ECF No. 218-4 at 45-46 (RFA Nos. 115-116). Disputed that the shore excursions offered in connection with U.S.-to-Cuba cruises were "tourist" excursions because all of the shore excursions offered in Havana on U.S.-to-Cuba cruises were developed and operated in accordance with the OFAC General Licenses. *See* ECF No. 201-7 at 43:10-22, 51:3-25, 52:7-11, 85:24–86:5, 86:11-15, 91:11-15. Disputed that any of the shore excursions offered in connection with U.S.-to-Cuba cruises included "going to the beach." *See* ECF No. 218-3 at 10-11 (Interrog. G); Ex. 146 (MSCCUSA0000058302 at 58330–58333) and Ex. 147 (MSCCUSA0000046952 at 46978–46981) (collectively listing all shore excursions in Havana on U.S.-to-Cuba cruises, none of which included "going to the beach"). To the extent this fact addresses shore excursions in Havana offered on Cuba-to-Cuba Cruises, the asserted fact is not material to HDC's pleaded trafficking theory regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

57. Undisputed.

58. Undisputed.

59. Undisputed.

60. Undisputed.

61. Undisputed. However, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal by the Armonia in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

62. Disputed as phrased. MSC Cruises S.A. earned €247,023,000.00 million in *net cruise revenues* from cruises on the MSC Armonia and MSC Opera that docked at the Havana Port Terminal between 2015 and 2019. *See* ECF No. 218-5 at 3 (Interrog. No. 2); ECF No. 202-32 at 3–7. However, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal by the Armonia in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

63. Undisputed.

64. Undisputed.

65. Undisputed. However, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

66. Undisputed, however, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

67. Undisputed, however, this fact is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

68. Undisputed. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

69. Disputed. MSC Cruises did not earn a profit from its cruises from the United States to Cuba which included a use of the Havana Port Terminal. *See* ECF No. 212-3 (MSCSA0000000236) (spreadsheet of U.S.-to-Cuba cruise revenues and expenses reflected in "Net income before taxes" in "Total" column); ECF No. 218-4 at 19-20 (RFA No. 51) (MSC Cruises S.A. "denies that it made any profit from those cruises"); ECF No. 218-5, at 3 (Interrog. No. 2); ECF No.

218-16 at 2 (spreadsheet of Cuba-to-Cuba cruise revenues and expenses reflected in "Net income before taxes" row). The citation provided by HDC (ECF No. 201-6 at 136:7-16) does not support HDC's assertion that MSC Cruises S.A. "profited from" its use of the Havana Port Terminal. And whether MSC Cruises S.A. profited from cruises that docked at the Havana Port Terminal other than the U.S.-to-Cuba cruises is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

70. Undisputed.

71. Undisputed. However, MSC Cruises (USA) Inc. did not cruise to Cuba. *See* ECF No. 201-1 at 89:5-14 ("sales and marketing" in the U.S. was the "extent of the services performed by [MSC Cruises (USA) Inc.] with regards to cruises to Cuba"), 134:9–135:7 (MSC Cruises (USA) Inc. "did not get involved in any of" the cruise operations or use of the Terminal), 159:1-18 (same), 96:25–97:5 (no agreements entered into between MSC Cruises (USA) Inc. and the Cuban Government relating to cruises to Cuba), 262:5–263:4 (same).

72. Undisputed. However, MSC Cruises S.A. Co. did not cruise to Cuba. *See* ECF No. 201-1 at 21:18-24 ("MSC Cruises S.A. Co. has no function and no employees."), 24:21-23 (MSC Cruises SA Co. "[n]ever engage[d] in any business"), 133:16-21 (MSC Cruises SA Co. had no role in deciding where to dock ships in Cuba), 262:5–263:4 (same); ECF No. 201-6 at 16:20–17:8 (MSC Cruises SA Co. did not have any business).

73. Disputed as phrased. Undisputed that the U.S. Government did not instruct, direct or designate MSC Cruises S.A., whether orally or in writing, requiring it to use the Havana Port Terminal in its cruises to Cuba, however, the General Licenses authorized MSC Cruises to sail from the United States to Cuba. *See* ECF No. 218-4 at 12 (RFA No. 27), 15-16 (RFA No. 36-39); ECF No. 201-3 at 96:2-96:13; ECF No. 201-1 at 105:3-8, 112:13-16; ECF No. 201-6 at 100:3-5; 80 Fed. Reg. 56916; 31 C.F.R. § 515.572(a)(2)(i); 80 Fed. Reg. 56,898; 15 C.F.R. § 740.15 and § 746.2.

74. Undisputed.

75. Undisputed.

76. Disputed as phrased. The Cuban Government informed MSC Cruises S.A. that, due to the size of its ships, the only Cuban port to which it could cruise was Havana. *See* ECF No. 201-3, at 85:18–87:14. Undisputed that the U.S. Coast Guard did not decide which ports MSC Cruises S.A. would call on in Cuba. *See* ECF No. 201-3 at 79:25–80:04.

**77.** Undisputed. However, MSC Cruises clarifies that it is the LIBERTAD Act itself which provides an exclusion from liability under the LIBERTAD Act for lawful travel to Cuba—in this case, travel to Cuba in compliance with the OFAC General Licenses. *See* 22 U.S.C. § 6023(13)(B)(iii).

**78.** Undisputed.

**79.** Disputed as phrased. MSC Cruises objects that Paragraph 79 is a legal conclusion, not a fact. Undisputed that the OFAC General Licenses did not "make it necessary" for the Armonia to use the Havana Port Terminal during its U.S.-to-Cuba cruises, however, the General Licenses authorized MSC Cruises to sail from the United States to Cuba. *See* 80 Fed. Reg. 56916; 31 C.F.R. § 515.572(a)(2)(i); 80 Fed. Reg. 56,898; 15 C.F.R. § 740.15 and § 746.2. Moreover, the United States Government's position as told to HDC was that the use of the Havana Port Terminal was subject to the "clear exclusion in Title IV's definition of 'traffics' of transactions and uses of property incident to lawful travel to Cuba," and such exclusion under Title IV of the Helms-Burton Act, like under Title III, requires that the use at issue be "necessary" to the conduct of such travel. *See* 22 U.S.C. § 6023(13)(B)(iii); ECF No. 210-29 (HDC 016084). To the extent this fact refers to MSC Cruises' Cuba-to-Cuba Cruises, this is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba, since only those cruises were conducted pursuant to the OFAC General Licenses. *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

**80.** Undisputed.

**81.** Undisputed.

**82.** Undisputed.

**83.** Undisputed.

**84.** Disputed. MSC Cruises S.A. was told by Cuban Government officials that it was required to dock its ships at Pier No. 1 of the Havana Port Terminal. *See* ECF No. 210-38 at ¶¶ 11-15; ECF No. 201-3 at 136:20-22 ("[T]hey gave us as the only option the Sierra Maestra and the cruise terminal pier."); ECF No. 201-8 at 107:5-15, 108:23–109:1, 115:13-25; ECF No. 201-6 at 99:14-24.

**85.** Disputed as phrased. The Cuban Government required MSC Cruises S.A. that, if it wanted to cruise to Cuba, the only Cuban port to which it could cruise due to the size of its ships

10

was Havana. *See* ECF No. 201-3 at 85:18–87:14.

86. Disputed. *See* ECF No. 201-3, at 85:18–87:14.

87. Undisputed.

88. Disputed. *See* ECF No. 210-38 ¶¶ 10-16; ECF No. 201-3 at 111:16-18 ("The president of Aries has explicitly told us that the ship – our ship could call only Havana cruise terminal."); *id.* at 113:13-25 (confirming that Norberto Perez del Toro of Aries "said to Captain Pastena as well as to me" that MSC Cruises was required to use the Havana Port Terminal); *id.* at 136:8-22 ("[T]he Cuban authorities . . . said that this was not possible to use [the Havana Container Terminal, or "TCH"] because they could not have customs and immigration operations there for all the passengers. That's why they gave us as the only option the [Havana Port Terminal, Pier No. 1]."); ECF No. 201-8 at 107:5-15 ("[The Cuban] authority denied the container terminal of Havana. The only option you have is to go at Sierra Maestra one north without any dolphin, any . . . facility."); *id.* at 108:4-6 ("[W]e receive information from Havana that we can get the authorization only if we go at Sierra Maestra Terminal"); *id.* at 108:23–109:1 ("[W]e [did] not get the authorization to go [to the TCH]. We get only the authorization to go at [the Havana Port Terminal]."); *id.* at 111:1-13 (in response to a question regarding the alleged "authorization as of June 4 or 5 of 2015 to call at the Havana container terminal," Pastena explains: "I received this authorization verbally. But . . . someone – Mr. Castro – someone very high level – some minister take the decision no. The cruise vessel have to go at Sierra Maestra. This is some decision that you accept or you not go."); *id.* at 115:13-25 (Aries told Captain Pastena that "we have to use the Sierra Maestra number one"); *id.* at 117:3-5 ("[T]he major authority decide we no go at the container terminal."); ECF No. 201-6 at 99:14-24 ("[T]here were initial discussions about the possibility to – or to discuss for other venues in La Habana – I think in particular the former container terminal. But then they were cut down . . . I think by the ministry of transport saying . . . you are authorized to dock at the Sierra Maestra Terminal and . . . not just the terminal but . . . the very specific berth north of the San Francisco Pier.").

89. Disputed as phrased. The Cuban authorities would not allow MSC Cruises S.A. to do so. ECF No. 210-48 (MSCCUSA0000079557) at 561, Rows 17-18 ("vessels are not currently allowed to anchor" and "tenders use not allowed"); ECF No. 201-6 at 86:15–87:25 (Aries told MSC Cruises S.A. "no anchor[ing] was allowed"); ECF No. 210-38 ¶¶ 15, 17. The materials that HDC cites refer to an employee of a different cruise line supposedly observing tenders from a cruise ship

11

called the FTI Berlin.  MSC Cruises does not know what approval that ship may have obtained from the Cuban authorities, but that vessel is more than 100 meters smaller than MSC Opera and Armonia.

**90.** Undisputed.

**91.** Disputed as phrased.  Undisputed that the MSC ships were capable of anchoring offshore and tendering passengers to shore in Punta Frances (*see infra* Response to No. 92), but MSC Cruises S.A. was never given authorization to do so anywhere else in Cuba, including Havana. *See* ECF No. 210 ¶ 39.

**92.** Disputed as phrased.  The cited materials state that small ships might be able to embark and disembark passengers there.  MSC Cruises S.A. did sail to Isla de Juventud as part of its Cuba-to-Cuba Cruises and tendered passengers to the beach destination, but ultimately ceased because (1) the travel was unsafe and (2) offering excursions at this location would not satisfy the "educational people-to-people" requirement of the OFAC General Licenses.  *See* ECF No. 218-27, at 68:17–69:22, 79:4-81:5; ECF No. 218-27 at 247, 249; ECF 218-30 at 3; ECF No. 201-3 at 33:22–34:14 ("it was too dangerous"); ECF No. 201-8 at 30:6-8, 36:14-37:2.

**93.** Undisputed.

**94.** Undisputed.

**95.** Undisputed.  *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

**96.** Undisputed.  *See* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

**97.** Disputed.  Because MSC Cruises S.A.'s ships could feasibly conduct lawful travel to Cuba by sailing to Havana and docking at the Terminal, it never considered ordering a smaller vessel that could go to either Santiago de Cuba or Cienfuegos to know if there were limitations.  *See* ECF No. 210-38 ¶ 6; ECF No. 201-3 at 85:18–87:7, 113:13–114:14 (Aries told Onorato that "Havana was the only option" due to "the size of that ship"), 142:4-12; ECF No. 201-8 at 77:25–78:2 ("There is no other port in Cuba that can attend [a] vessel the size of the MSC vessel[s]."), *id.* at 133:2-18 (same); ECF No. 201-6 at 114:17–116:5 (same).

**98.** Undisputed.

**99.** Disputed.  Not all cruise travel is tourism, and  the U.S.-to-Cuba cruises offered by MSC Cruises were carrier services to Cuba for passengers engaging in people-to-people excursions authorized by and compliant with the OFAC General Licenses.  *See* ECF No. 201-7 at 43:10-22, 51:3-25, 52:7-11, 85:24–86:5, 86:11-15, 91:11-15.

12

100. Undisputed.

101. Undisputed. *But see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

102. Disputed as phrased. MSC Cruises S.A. did not offer this excursion on any of the U.S.-to-Cuba cruises. *See* ECF No. 201-7 at 35:25–37:15 (discussing beach excursion in response to question whether, "for the MSC Opera which homeported in Havana . . . passengers ha[d] the option of going to the beach . . . ."); ECF No. 218-11 at MSCCUSA0000068785 (Shore Excursion Daily Report for Varadero Beach excursion offered on Feb. 18, 2018 in connection with MSC Opera Cuba-to-Cuba cruise); ECF No. 218-17, at NCLH_2359-00027314 (list of shore excursions for December 2015 Cuba-to-Cuba cruise on the MSC Opera); ECF No. 218-3 at 10-11 (Interrog. G); Ex. 146 (MSCCUSA0000058302 at 58330–58333) and Ex. 147 (MSCCUSA0000046952 at 46978–46981) (collectively listing all shore excursions in Havana on U.S.-to-Cuba cruises). Undisputed that MSC Cruises S.A. sold a "Sun, Sea and Sand at Varadero Beach" shore excursion to passengers on certain Cuba-to-Cuba Cruises, but this is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba, *see* MSC Cruises' Objection to Pleading a New Theory Through MSJ.

103. Disputed as phrased. MSC Cruises S.A. did not offer this excursion on any of the U.S.-to-Cuba cruises. Undisputed that MSC Cruises S.A. sold a "Beach Time at Santa Maria del Mar" shore excursion on certain Cuba-to-Cuba Cruises, however, this is not material to the trafficking theory HDC pleaded regarding uses of the Havana Port Terminal in connection with cruises from Miami to Cuba, *see* MSC Cruises' Objection to Pleading a New Theory Through MSJ. *See* ECF No. 218-17, at NCLH_2359-00027313 (list of shore excursions for December 2015 Cuba-to-Cuba cruise on the MSC Opera); ECF No. 218-3 at 10-11 (Interrog. G); Ex. 146 (MSCCUSA0000058302 at 58330–58333) and Ex. 147 (MSCCUSA0000046952 at 46978–46981) (collectively listing all shore excursions in Havana on U.S.-to-Cuba cruises).

104. Disputed as phrased. MSC Cruises clarifies that the "Tropicana Cabaret" excursions offered on U.S.-to-Cuba cruises provided guests an opportunity to experience Cuban culture and were specifically designed to include an educational component in keeping with the requirements of the OFAC "people-to-people" program. *See* ECF No. 201-7 at 74:22–76:15; *id.* at 77:22–78:18.

105. Disputed as phrased. In the cited testimony, MSC Cruises S.A. CEO Giovanni Onorato only states that he is "not aware" if any passengers did this.

13

**106.** Disputed as phrased. In the cited testimony, MSC Cruises S.A. CEO Giovanni Onorato only states that he is "not aware" if any passengers were informed of this.

**107.** Disputed as phrased. In the cited testimony, MSC Cruises S.A. CEO Giovanni Onorato only states that he is "not aware" if any passengers were educated on this.

**108.** Undisputed.

**109.** Disputed as phrased. Undisputed that the cited materials show that the Cuban Government confirmed the availability of ports or anchorage sites at Santiago de Cuba, Cienfuegos, and Holguin for another cruise line that met the ship size requirement for those sites. Disputed that the Cuban authorities authorized that other cruise line – or MSC Cruises S.A. – to use other ports or anchorage sites in Havana other than Pier No. 1 at the Terminal for MSC Cruises S.A.'s Miami-based cruises to Cuba. *See* ECF No. 201-3, at 85:18–87:14. The Cuban Government authorized MSC Cruises S.A. to use the anchorage site at Punta Frances, Isla de la Juventud, for Cuba-to-Cuba Cruises, but this location was not authorized for U.S.-to-Cuba cruises nor compliant with OFAC General Licenses. *See* ECF No. 218-4 at 23 (RFA Nos. 59, 61), 39 (RFA No. 100); ECF No. 218-4 at 39 (RFA No. 100); ECF No. 201-8 at 30:6-8. Moreover, even with respect to Cuba-to-Cuba Cruises, MSC Cruises was only permitted to sail to Punta Frances if it first sailed to Havana on the same itinerary because Punta Frances lacked the required facilities for immigration, customs, and medical screening. *See* ECF No. 201-8 at 26:14-27:22 (Aries instructed MSC Cruises S.A. that "[f]or immigration formalit[ies], you have to go first to Havana and then you can use this . . . anchorage port"), 132:10-24 ("It's impossible" to travel to Isla de la Juventud without traveling to Havana in the same itinerary "because Isla de la Juventud don't have custom and don't have immigration. You cannot go only to Isla de la Juventud without going by Havana the day before or the day after.").

Dated: October 18, 2021                    Respectfully submitted,

*/s/ J. Douglas Baldridge*

J. Douglas Baldridge (Fla. Bar No. 708070)
Andrew T. Hernacki (admitted *pro hac vice*)
Justin B. Nemeroff (admitted *pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue
Washington, D.C. 20001
T: (202) 344-4703
F: (202) 344-8300
JBaldridge@venable.com
ATHernacki@venable.com
JBNemeroff@venable.com

*Counsel for MSC Cruises*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, the foregoing was filed under seal with the Clerk of Court using CM/ECF. I also certify that the foregoing is being electronically served this October 18, 2021, on all counsel of record.

/s/ *J. Douglas Baldridge*