**IN THE UNITED STATES DISRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**No. 1:19-cv-23588-Bloom/Louis**

HAVANA DOCKS CORPORATION,

*Plaintiff,*

     v.

MSC CRUISES (USA) INC.
MSC CRUISES SA CO. and
MSC CRUISES S.A.

*Defendants.*

**MSC CRUISES' OPPOSITION TO PLAINTIFF'S**
**<u>INDIVIDUAL MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

I.    Plaintiff's Allegations are Explicitly Limited to US-Cuba Cruises .................................... 1
      A.    HDC Never Pled a Trafficking Theory Based on Cuba-to-Cuba Cruises ............. 2
            1.    Plaintiff Admits That Its First Two Complaints Were Expressly
                  Limited to Liability Based Upon US-Cuba Cruises ................................... 2
            2.    HDC Filed a Second Amended Complaint to Add MSC Cruises
                  S.A. as Operator of US-Cuba Cruises ...................................................... 3
            3.    Following the SAC, HDC Sought Discovery Only As to US-Cuba
                  Cruises ...................................................................................................... 3
      B.    HDC Attempts to Backdoor Its Cuba-to-Cuba Trafficking Theory via
          Discovery Order Without Seeking Leave to Amend Its Complaint ..................... 4
      C.    This Court Must Strike from HDC's Motion a Cuba-to-Cuba Trafficking
          Theory Which Was Not Pled ............................................................................. 6

II.    Even if this Court Permits HDC to Pursue Liability on a Cuba-to-Cuba Trafficking
Theory, That Claim Fails as a Matter of Law ................................................................... 7
      A.    The Claim is Time-Barred by Title III's Section 6084 ...................................... 7
      B.    The Helms-Burton Act Has No Extraterritorial Reach Over Conduct Which
          Is Not Governed by U.S. Law and Does Not Touch the United States ................. 9
      C.    The Cuba-to-Cuba Cruises Constitute "Lawful" Travel ..................................... 9

III.    MSC Cruises S.A.'s Use of the Terminal for US-to-Cuba Cruises Is Not Trafficking .... 11
      A.    MSC Cruises S.A.'s US-Cuba Cruises Constituted "Lawful Travel" ................. 11
      B.    Docking at the Terminal Was Incident to Lawful Travel ..................................... 11
      C.    Docking at the Terminal was Necessary to Lawful Travel .................................. 14
            1.    "Necessary" Does Not Mean "No Other Alternative" ........................... 14
            2.    MSC Cruises Did Not Have Any Other Alternatives in Connection
                  With its Lawful Travel to Havana ........................................................... 15

IV.    MSCC USA and MSCC SA Co. Did Not Traffic Either ................................................... 18

V.    HDC Did Not Prove Intent ............................................................................................. 19
      A.    MSC Cruises S.A. Did Not Know or Have Reason to Know the Terminal
          was HDC's "Confiscated Property" .................................................................... 19
      B.    MSC Cruises S.A. Did Not Intentionally Use the Terminal Believing it Was
          Confiscated ...................................................................................................... 19

CONCLUSION ........................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bloom v. Alvereze,*
    498 Fed. App'x. 867 (11th Cir. 2012) ........................................................................8

*Cinnamon Hills Youth Crisis Ctr., Inc. v. State George City,*
    685 F.3d 917 (10th Cir. 2012) .................................................................................14

*CTS Corp. v. Waldburger,*
    573 U.S. 1 (2014) ......................................................................................................8

*de Fernandez v. Seaboard Marine, Ltd.,*
    2021 WL 3173213 (S.D. Fla. July 17, 2021) (Bloom, J.)........................................20

*Gatlin Oil Co. v. United States,*
    169 F.3d 207 (4th Cir. 1999) ...................................................................................16

*Gilmour v. Gates, McDonald & Co.,*
    382 F.3d 1312 (11th Cir. 2004) .................................................................................7

*Glen v. Am. Airlines, Inc.,*
    No. 4:20-CV-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020), *vacated on*
    *other grounds,* 7 F.4th 331 (5th Cir. 2021)..............................................................20

*Glen v. Trip Advisor LLC,*
    2021 WL 1200577 (D. Del. Mar. 30, 2021) ......................................................19, 20

*Gonzalez v. Amazon.com, Inc.,*
    2020 WL 1169125 (S.D. Fla. Mar. 11, 2020), *aff'd*, 835 F. App'x 1011 (11th
    Cir. 2021)................................................................................................................20

*GTE Service Corp. v. Federal Communications Commission,*
    205 F.3d 416 (D.C. Cir. 2000)..................................................................................14

*Kiobel v. Royal Dutch Petroleum Co.,*
    569 U.S. 108 (2013)...................................................................................................9

*O'Brien v. NCL (Bahamas) Ltd.,*
    288 F. Supp. 3d 1302 (S.D. Fla. 2017) .......................................................................7

*Pannu v. Iolab Corp.,*
    96 F. Supp. 2d 1359 (S.D. Fla. 2000) .........................................................................8

*Pruitt v. U.S.,*
    274 F. 3d 1315 (11th Cir. 2001) .................................................................................8

*Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*,
    625 F. Supp. 2d 1198 (S.D. Fla. 2008) ...................................................................7

*Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) .............................................................................................8

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016) .................................................................................................9

*In re South Motor Co. of Dade Cnty.*,
    161 B.R. 532 (Bankr. S.D. Fla. 1993) ....................................................................8

*Vorchheimer v. Philadelphian Owners Assn.*,
    903 F.3d 100 (3d Cir. 2018) ...................................................................................14

**Statutes**

22 U.S.C. § 6023(13)(B)(iii) ...............................................................................14, 15

22 U.S.C. § 6084 .....................................................................................................7, 8

22 U.S.C. § 7209(b)(1) ...............................................................................................13

22 U.S.C. § 7209(b)(2) ...............................................................................................13

**Other Authorities**

15 C.F.R. § 746.2 .......................................................................................................15

31 C.F.R. § 515.560(5) ...............................................................................................14

31 C.F.R. § 515.565(b)(1) ..........................................................................................12

31 C.F.R. § 515.572 ..............................................................................................12, 15

31 C.F.R. § 515.572(a)(2)(i) ....................................................................................9, 12

31 C.F.R. § 515.572(a)(5) ..........................................................................................12

142 Cong. Rec. H1645-02 ..........................................................................................15

CRUISE HIVE, https://www.cruisehive.com/msc-cruise-ship-to-homeport-in-
    havana-cuba-from-winter-2015/7269 .......................................................................2

Fed. R. Evid. 15(c)(1) ..................................................................................................8

Black's Law Dictionary (10th ed. 2014)......................................................................11

MSC CRUISES, http://www.mscpressarea.com/en_INT/press-releases/484 ...................2

## INTRODUCTION

Plaintiff's Motion should be denied for several reasons.[1]  *First*, this case has always been about one theory of "trafficking" related to cruises operated by MSC Cruises S.A. between the United States and Cuba.  Now, for the first time, Plaintiff seeks to inject a new theory involving cruises that "homeported" in Havana ("Cuba-to-Cuba" cruises) that are not—and never were—in this case. Plaintiff amended its complaint to expressly limit its theory to trafficking by cruises "from Miami to Cuba," limited its discovery to US-Cuba cruises, and Judge Louis allowed only narrow discovery about Cuba-to-Cuba cruises if it was relevant to the US-Cuba cruises theory. Plaintiff's last-ditch effort to amend its complaint via summary judgment must be rejected.

*Second*, even if a trafficking theory premised on Cuba-to-Cuba cruises were part of this case, Plaintiff's theory as to those cruises fails as a matter of law because (a) Plaintiff's claim is time-barred, (b) the Helms-Burton Act cannot be applied extraterritorially against a Swiss company that operated Cuba-to-Cuba cruises that did not touch the U.S., and (c) even if the Act applies to these cruises, they were squarely "lawful travel" and, thus, not "trafficking."

*Third*, Plaintiff fails to rebut "lawful travel."  MSC Cruises S.A.'s use of the Terminal for U.S-Cuba cruises was "lawful" because MSC Cruises S.A. operated its cruises pursuant to authorization and encouragement from the U.S. Government, and its uses were both "incident to" and "necessary to" that "lawful" travel.  Instead, Plaintiff attempts to inject an untenable "tourism" standard that is contrary to the statute and to applicable OFAC regulations.

*Fourth*, Plaintiff drops any effort to hold liable MSCC SA Co.  And as for MSCC USA, there is no "indirect" trafficking theory pleaded as to this entity and, even if there were, all alleged activity was squarely "necessary to" lawful travel.  *Finally*, Plaintiff does not satisfy scienter because it provides <u>no</u> evidence that MSC Cruises S.A. intended to use confiscated property that was owned by a U.S. national and without its authorization.

## ARGUMENT

### I.   Plaintiff's Allegations are Explicitly Limited to US-Cuba Cruises

This case is, and always has been, about one claim: alleged trafficking by MSC Cruises for docking at the Terminal as part of its *Miami-based cruises to Cuba* from December 10, 2018 to June 3, 2019.  Nonetheless, HDC's Motion attempts to inject a new theory that MSC Cruises S.A.

---

[1]   MSC Cruises incorporates by reference the concurrently-filed Omnibus Opposition to Havana Docks' Omnibus Motion for Summary Judgment ("Defs.' Omnibus Opp.").

trafficked by "homeport[ing]" two ships (the Opera and Armonia) at the Terminal as part of Cuba-to-Cuba cruises from December 2015 to March 2019 that did not involve the United States, did not travel to or from the United States, and were not subject to U.S. law.  *See* ECF No. 225 at 4. However, HDC's operative complaint is limited to a trafficking theory based <u>only</u> on cruises "from Miami to Cuba."  ECF No. 104 ¶ 23.  This has been proven repeatedly through the plain text of Plaintiff's complaints, discovery agreements, Plaintiff's own representations, and a Court order.

### A.     HDC Never Pled a Trafficking Theory Based on Cuba-to-Cuba Cruises

#### 1.     <u>Plaintiff Admits That Its First Two Complaints Were Expressly Limited to Liability Based Upon US-Cuba Cruises</u>

Plaintiff's first two complaints, which were only filed against MSCC USA and MSCC SA Co., expressly limited its trafficking allegations to US-Cuba cruises.  *See* ECF No. 1 ¶ 3 ("provided cruises **to Cuba from Miami**"), ¶ 20 ("**beginning on or around December 10, 2018** [the date start date for Miami-Cuba cruises], the Defendants did traffic . . . in the Subject Property") (Aug. 28, 2019) (emphasis added); ECF No. 56 ¶ 2 ("the cruises to Cuba **from Miami that are the subject of this lawsuit**.") (Apr. 20, 2020) (emphasis added).  Plaintiff limited its case to US-Cuba cruises notwithstanding that there had been public information since 2015 that MSC Cruises S.A. was sailing to Cuba (and to the Terminal) without traveling to the United States.  *See* Opp. Statement of Undisp. Mat. Facts ("Opp. SUF") ¶¶ 37–38.[2]  And, importantly, Plaintiff *admitted* its complaint was limited to a US-Cuba cruise theory.  *See* ECF No. 171 at 4–6; *see, e.g.,* ECF No. 171-3 at 37:18-20 (7/27/20 Hrg. Tr.) (HDC *only* sought certain information related to Cuba-to-Cuba cruises beginning in 2015 because it was allegedly relevant to understand "what went into that decision" to dock at the Terminal in 2015 because it "would apply equally to the U.S.-to-Cuba travel."); ECF No. 171-4 at 34:1-6 (8/25/20 Hrg. Tr.) (HDC describing Cuba-to-Cuba cruises as those "**which are not the subject matter [of this lawsuit]**") (emphasis added); *id.* at 21:16-22 (Judge Louis concluded that a reading of the First Amended Complaint "does support [MSC Cruises'] understanding that this complaint arises from and based the violation alleged on travel **between the United States and Cuba**.") (emphasis added).

---

[2]     *See, e.g.,* CRUISE HIVE, https://www.cruisehive.com/msc-cruise-ship-to-homeport-in-havana-cuba-from-winter-2015/7269 (July 3, 2015) ("MSC Opera will begin sailing from Havana, Cuba in December 2015."); MSC CRUISES, http://www.mscpressarea.com/en_INT/press-releases/484 (Dec. 3, 2015) ("MSC Cruises [will] homeport[] a second ship in Havana from the winter 2016-17 season … [at] <u>Havana's cruise terminal at the foot of the Ciudad Vieja, or Old Havana</u>) (emphasis added).

2.      HDC Filed a Second Amended Complaint to Add MSC Cruises S.A. as
        Operator of US-Cuba Cruises

In September 2020, HDC filed a motion for leave to file a second amended complaint ("SAC").  ECF No. 99.  Despite the fact that HDC had sufficient knowledge of the homeporting activity at the Terminal to expand its trafficking theory, the proposed amendments did not seek to include a broader theory.  Instead, the one-page motion stated only <u>one</u> reason for amending the complaint: "to add MSC Cruises SA as a defendant" because it operated the US-Cuba cruises:

> Defendants admit in the Answer that MSC Cruises SA, the parent of the Defendants, "operated" Defendants' **cruises from Miami, Florida to Cuba**. (ECF No. 98 at 2-3, 10.) To ensure that the proper parties are the named defendants to this suit, . . . Havana Docks respectfully requests leave to file a second amended complaint <u>to add MSC Cruises SA as a defendant to this suit</u>.

*Id.* at 2, 4 (emphasis added).

The SAC, besides identifying a new defendant in the "PARTIES" section of the complaint (¶¶ 2-6), only made *two* substantive changes to HDC's trafficking allegations.  In the section titled "MSC CRUISES' TRAFFICKING IN THE CONFISCATED SUBJECT PROPERTY," it (1) replaced "beginning on or about December 10, 2018" with "after November 1, 1996," and (2) **added** the phrase "**from Miami**" to allege that all MSC Cruises defendants "commenced, conducted and promoted their commercial cruise line business **from Miami to Cuba** using the Subject Property." *Compare* ECF No. 56 ¶¶ 21-22 *with* ECF No. 104 ¶¶ 23-24.  Thus, HDC's proposed SAC was even clearer than its previous iterations of the complaint because now it <u>explicitly</u> narrowed its trafficking theory to cruises "from Miami to Cuba," regardless of the date.  Indeed, there is no mention of any cruises *other* than those "from Miami to Cuba," including no mention of the Cuba-to-Cuba cruises or "homeporting."  Thus, it came as no surprise when HDC's counsel made similar representations in open court:  HDC was moving to amend because the defendants "admitted that their parent MSC Cruises S.A. actually was the one that operated the cruises **from Miami to Cuba. So we added it in as a party.**" ECF No. 171-5 (9/23/20 Hr'g Tr. at 4:9-13) (emphasis added).  MSC Cruises did not oppose the motion for leave and the motion was granted the same day.  *See* ECF Nos. 101, 102 (Oct. 6, 2020).  There was simply never any allegation from HDC that could have put MSC Cruises on notice that HDC's theory of liability had expanded through this complaint.

3.      Following the SAC, HDC Sought Discovery Only As to US-Cuba Cruises

Immediately after filing its SAC, Plaintiff served discovery requests to the newly-added MSC Cruises S.A. that were <u>explicitly</u> limited to cruises from Miami to Cuba.  *See* ECF No. 171-

6 at 2; ECF No. 171-7 at 2 (in document requests and interrogatories, HDC defined the term "**cruises**" to "mean[] the cruises that Defendant operates or operated . . . that provides or have provided **cruises to Cuba from Miami**."). MSC Cruises S.A. repeated the relevance objection its subsidiaries previously raised. *See, e.g.,* ECF No. 171-8 at Interrogatory B (in response to an interrogatory seeking "all revenues and profits earned from the cruises" MSC Cruises S.A. agreed only to produce "financial records reflecting all revenues earned from U.S.-to-Cuba cruises."). *HDC again did not challenge these objections.*

### B. HDC Attempts to Backdoor Its Cuba-to-Cuba Trafficking Theory via Discovery Order Without Seeking Leave to Amend Its Complaint

On June 2, 2021, with less than two months left in discovery, HDC's counsel emailed MSC Cruises' counsel, stating:

> We will be filing a motion for leave to file a third amended complaint tomorrow and I am writing to request your position on that motion. The proposed amendments are minor and tracked in the attached. **They are intended to clarify that MSC's use of the Subject Property from 2015 to 2019 through its homeport operations in Cuba are within the scope of this case**. Please let me know MSC agrees to that amendment.

ECF No. 171-11 at 2 (emphasis added). This "proposed" complaint made two changes:

- HDC added: "*This includes cruises . . . that originated in Cuba . . .  during the 2015 through 2019 timeframe*" (¶ 2); and

- HDC removed the phrase "*from Miami to Cuba*" from its core trafficking allegation (¶ 23).

ECF No. 171-12. After MSC Cruises informed HDC that it opposed the motion, (ECF No. 171-11 at 1), that motion for leave to amend was <u>never</u> filed. Instead, HDC requested a conferral on MSC Cruises' objection to its recent interrogatory seeking passenger totals on all cruises to Cuba. *See* ECF No. 171-13. Of course, this was the same relevance objection that MSC Cruises had raised for a year and which, up until this point, HDC had never sought to challenge.

Before Judge Louis, HDC's counsel attempted to explain, for the first time, that it sought to include a Cuba-to-Cuba liability theory because it believed MSC Cruises' existing affirmative defenses do not apply to Cuba-to-Cuba cruises. *See* ECF No. 171-14 (6/29/21 Hr'g Tr.) at 41:25-42:3 (COURT: "I think if we peel everything back it feels like the reason you want this is because these [Cuba-to-Cuba] cruises are not subject to that [lawful travel] affirmative defense.

4

MARTINEZ: Right.").[3]  The parties then agreed to brief this issue and hold a subsequent hearing. *See* ECF Nos. 170, 171.[4]  MSC Cruises argued in its brief that this Cuba-to-Cuba theory was new and distinct, and if the Court were to rule that such a theory could be advanced by HDC at the close of discovery, MSC Cruises would be significantly prejudiced without time to adequately defend against this claim before the summary judgment deadline.  *See* ECF No. 171 at 17-19.

On August 9, 2021, Judge Louis held a second hearing, which included addressing MSC Cruises S.A.'s objection to responding to interrogatories about Cuba-to-Cuba shore excursions, itineraries, and revenues/expenses arising from those cruises.  *See* ECF No. 177 (Notice of Discovery Hearing).  At the hearing, HDC's counsel reiterated that it sought this information to pursue a trafficking theory based on Cuba-to-Cuba cruise activity, but also raised a brand new basis for seeking Cuba-to-Cuba financial information: to rebut MSC Cruises' Due Process defense that damages are grossly disproportionate.  *See* ECF 182, Aug. 9, 2021 Hr'g Tr. at 39:12–40:13.

Judge Louis ruled, 20 days before discovery closed, that MSC Cruises S.A. was not required to provide basic information about Cuba-to-Cuba cruises, including passenger totals, itineraries, or information about shore excursions in Havana offered on Cuba-to-Cuba cruises.  *See* ECF No. 187 at 4-5, 8-9.  Judge Louis also expressly held that shore excursions on "Cuba-to-Cuba cruises are not relevant to rebutting Defendants' lawful travel defense" because "the OFAC regulations do not govern the Cuba-to-Cuba cruises" and "therefore, [are not] probative of whether Defendants complied with the OFAC requirements."  *Id.* at 8-9 (emphasis added).  Logically, if such information is not relevant to rebutting MSC Cruises' defense that its conduct was excluded from trafficking, *it also cannot be relevant to HDC's claim of establishing trafficking*.

While Judge Louis ordered MSC Cruises S.A. to provide a spreadsheet of costs and revenues associated with Cuba-to-Cuba cruises, the only relevance basis the Court acknowledged in compelling this spreadsheet was to "rebut Defendants' Due Process affirmative defense," not to pursue a second trafficking theory.  *See id.* at 6.  In fact, Judge Louis acknowledged that because

---

[3]      Although MSC Cruises' lawful travel affirmative defense is broadly pled, Havana Docks' argument that the lawful travel defense does not apply to Cuba-to-Cuba cruises is irrelevant because MSC Cruises was only ever raising affirmative defenses pertaining to US-Cuba cruises.

[4]      Notably, before this second hearing, HDC served *another* set of interrogatories on MSC Cruises S.A. consisting of three identical requests from the previous January 2021 set requesting all (1) itineraries, (2) revenues earned and (3) shore excursions offered on "MSC cruises to Cuba from December 2015 to March 2019." ECF No. 171-15. MSC Cruises S.A. timely responded, objecting on relevance grounds as it had done for over 13 months.  *See* ECF No. 171-16.

MSC Cruises believes HDC was attempting to expand its liability theory "under the existing complaint" without seeking leave to amend, compelling this discovery would not prejudice MSC Cruises from "later contest[ing] use of the discovery" by "moving to exclude any reference." *Id.* at 7.  In short, Judge Louis never accepted HDC's principal argument that its complaint includes a trafficking theory based on uses of the Terminal during Cuba-to-Cuba cruises.[5]

### C. This Court Must Strike from HDC's Motion a Cuba-to-Cuba Trafficking Theory Which Was Not Pled

Based on the unambiguous language of the SAC and the history set forth above, HDC did not include a trafficking theory premised on uses of the Subject Property for anything other than cruises "from Miami to Cuba."  This is obvious because (1) HDC intentionally amended its complaint in September 2020 to *specify* that cruises "from Miami" were the subject of its trafficking theory, (2) sought discovery from MSC Cruises S.A. related only to US-Cuba cruises, and (3) right before discovery ended, HDC proposed—but never filed—a motion for leave to amend the complaint only to remove the phrase "from Miami."  Having failed to plead this theory, it cannot form the basis for summary judgment and should be stricken.

During the discovery dispute, HDC argued that it added the phrase "from Miami" to qualify its trafficking allegation in order to establish personal jurisdiction over the Swiss parent, MSC Cruises S.A.  *See* ECF No. 171-14 at 7:18–8:7; ECF 182, Aug. 9, 2021 Hr'g Tr. at 56:9-20.  This argument makes no sense for two reasons.  *First*, HDC already alleged personal jurisdiction elsewhere in the complaint, by referencing twice in the Parties section that MSC Cruises S.A. "provided cruises to Cuba from Miami" "that used the Subject Property."  ECF No. 104 ¶ 3. It defies credulity that it decided to limit its only trafficking allegation twenty paragraphs later (under the trafficking section) to cruises "from Miami" solely for jurisdictional purposes and yet omit any reference to homeporting activities or the Cuba-to-Cuba cruises.

---

[5]     To the extent that Plaintiff attempts to rely upon Judge Louis' statement that MSC Cruises' relevance objection was "too broad to be sustained," this argument holds no merit.  Judge Louis incorrectly characterized MSC Cruises' objection here to be "that *no* information relating to or arising from Cuba-to-Cuba travel *could be relevant*."  ECF No. 187 at 4 (emphasis in original). MSC Cruises acknowledges that is too broad because certain information relating to Cuba-to-Cuba cruises are relevant to establishing (or rebutting) necessity of using the Terminal during US-Cuba cruises, and MSC Cruises provided that information without objection.  MSC Cruises' relevance objection was narrower: it was an objection to providing any information about Cuba-to-Cuba cruises that is ***solely*** related to advancing an unpled trafficking theory based on Cuba-to-Cuba Cruises.  On that point, Judge Louis never overruled the defendants' objection as discussed above.

*Second*, MSC Cruises S.A. was the <u>only</u> cruise line defendant it sued which had two different "types" of cruises to Cuba (*i.e.,* those that traveled to the United States and those that did not), and yet HDC chose to limit its core trafficking allegations of the complaint (¶¶ 23-24) <u>only in MSC Cruises' case</u>.  Indeed, the trafficking allegations against MSC Cruises are identical to the allegations in the complaints against Carnival, Norwegian, and Royal Caribbean *except for* the phrase "from Miami" in this case.  *See Carnival*, ECF No. 149 ¶¶ 40-41, *Norwegian,* ECF No. 56 ¶¶ 21-22, *Royal Caribbean*, ECF No. 46 ¶¶ 22-23 (alleging each defendant "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business <u>to Cuba</u> using the Subject Property by regularly embarking and disembarking its passengers").  HDC could have simply left its allegation unchanged and alleged broadly that MSC Cruises used the Subject Property through its "cruise lines business to Cuba."  Or, HDC could have specified both types of cruise travel just as it did in its never-filed proposed third amended complaint.  It did neither.

HDC cannot be permitted to use summary judgment to pursue a new theory for the first time.  *See Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004) (plaintiff could not raise a new claim at summary judgment that was not pled); *O'Brien v. NCL (Bahamas) Ltd.*, 288 F. Supp. 3d 1302, 1306 n.3 (S.D. Fla. 2017) (collecting cases); *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1254 (S.D. Fla. 2008).  This Court must prohibit HDC from pursuing a Cuba-to-Cuba cruises trafficking claim and resolve HDC's motion(s) based only on MSC Cruises S.A.'s alleged trafficking during its US-Cuba cruises.

## II.   <u>Even if this Court Permits HDC to Pursue Liability on a Cuba-to-Cuba Trafficking Theory, That Claim Fails as a Matter of Law</u>

### A.   The Claim is Time-Barred by Title III's Section 6084

Even if this Court were to find that HDC can pursue a Cuba-to-Cuba theory, it is time-barred because it was never advanced until more than two years after Cuba-to-Cuba cruises ceased.  Title III prohibits any trafficking claim from being "brought more than 2 years after the trafficking giving rise to the action as ceased to occur." 22 U.S.C. § 6084.  It is undisputed that MSC Cruises S.A. ceased offering its Cuba-to-Cuba cruises and ceased homeporting at the Terminal in March 2019.  Opp. SUF ¶¶ 37–39.  Despite being aware of this conduct before (due to publicly available information) and after it filed its original complaint in August 2019, HDC did not seek to include a trafficking theory based on Cuba-to-Cuba cruises.  In fact, HDC did not attempt to advance this theory until *more than two years* after March 2019: this Court can construe HDC's pursuit of this liability theory to have begun either (a) at the earliest, on June 23, 2021, when HDC noticed for

hearing MSC Cruises S.A.'s objections to producing information related to Cuba-to-Cuba cruises for the first time under the SAC (ECF No. 166) and asked Magistrate Judge Louis to find such a theory relevant, or (b) on September 20, 2021 through this summary judgment motion.[6]   Either way, both improper attempts to inject this theory into the case at the last minute are time-barred since both occurred more than two years after the Cuba-to-Cuba cruise activity ceased.  *See* 22 U.S.C. § 6084;  *CTS Corp. v. Waldburger*, 573 U.S. 1, 7-9 (2014) (a "statute of repose puts an outer limit on the right to bring a civil action" measured "from the date of the last culpable act or omission of the defendant."); *California Pub. Emp.'s Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (a statute that "runs from the defendant's last culpable act … not from the accrual of the claim … is close to a dispositive indication that the statue is one of repose.").[7]

---

[6]     Because HDC did not file a motion to amend its complaint, HDC cannot argue this new "theory" relates back to its previous complaint. *See* Fed. R. Evid. 15(c)(1).  If HDC had filed that motion and argued this theory related back to its original complaint, MSC Cruises would have argued that since this theory involves a different transaction, a different set of facts, and is an improper attempt to unexpectedly increase potential liability, the claim does not relate back and is barred by the statute of limitations.  *See Bloom v. Alvereze*, 498 Fed. App'x. 867, 883 (11th Cir. 2012) ("[l]imits to relation back are designed to protect defendants from prejudice not just from lost and destroyed evidence, but from an unexpected increase in liability and an inherently more complex defensive strategy long after the statute of limitations had run"); *Pruitt v. U.S.*, 274 F. 3d 1315, 1318 (11th Cir. 2001) ("Congress did not intend rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts.").

[7]     Even if it were not statutorily barred by the Act's limitations period, HDC's purported theory based on Cuba-to-Cuba cruises is also barred by the doctrines of waiver, laches, and equitable estoppel because HDC never notified MSC Cruises S.A. or objected to its use of the Terminal for four years.  *See* ECF No. 133 at 19-20 (MSC Cruises S.A.'s affirmative defenses); *see also In re South Motor Co. of Dade Cnty.*, 161 B.R. 532, 543–44 (Bankr. S.D. Fla. 1993) (citing *Fla. House of Reps. v. U.S. Dep't. of Commerce*, 961 F.2d 941, 946 (11th Cir. 1992)) ("Waiver requires three elements: (1) the existence at the time of a waiver, of a right, privilege, advantage or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit."); *Pannu v. Iolab Corp.*, 96 F. Supp. 2d 1359, 1368 (S.D. Fla. 2000) (citation omitted) ("Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay.  Equitable estoppel may be applied to bar a claim where the following three elements are found: (1) the party making the claim has, through misleading conduct, led the non-claiming party to reasonably infer that the claimant does not intend to enforce his claim—'conduct' may include specific statements, action, inaction, or silence where there is a duty to speak; (2) the non-claiming party relies upon that conduct; (3) due to his reliance, the non-claiming party will be materially prejudiced if the claiming party is allowed to proceed with his claim.").

**B.** **The Helms-Burton Act Has No Extraterritorial Reach Over Conduct Which Is Not Governed by U.S. Law and Does Not Touch the United States**

The Supreme Court has recognized a "presumption against extraterritorial application" of United States laws. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013). This principle reflects the "presumption that United States law governs domestically but does not rule the world," and provides that "[w]hen a statue gives no clear indication of an extraterritorial application, it has none." *Id.* at 115-16; *see also RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) (citations omitted) (explaining that "this presumption . . . serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries" and "also reflects the more prosaic 'commonsense notion that Congress generally legislates with domestic concerns in mind'"). Here, Title III lacks the requisite "clear indication" and "does not rule the world" such that it cannot be applied extraterritorially for conduct that has no connection to the United States. Even if the Cuba-to-Cuba cruises were part of this case, which they demonstrably are not, there are simply no facts to demonstrate those cruises had *any* connection to the United States. Applying United States law to the conduct of a Swiss company operating cruise travel that did not touch the United States violates the presumption against extraterritorial application of U.S. law. Thus, Plaintiff's motion for summary judgment should be denied to the extent that it seeks to apply Title III extraterritorially.

**C.** **The Cuba-to-Cuba Cruises Constitute "Lawful" Travel**

Even if this Court were to hold that (1) HDC can pursue this theory for the first time at summary judgment, and (2) the Helms-Burton Act applies extraterritorially over conduct that did not touch the United States, such a theory fails as a matter of law because the travel was indisputably lawful.[8] With respect to the cruise defendants' "lawful travel" defense, the analysis throughout this case has been centered around the *United States'* regulations. The CACR and the OFAC general licenses under which MSC Cruises S.A. operated for its US-Cuba cruises, do not apply to cruises—such as the Cuba-to-Cuba cruises—that do <u>not</u> involve the United States. Rather, the general licenses authorize cruise travel "**between the United States and Cuba.**" *See* 31 C.F.R. § 515.572(a)(2)(i) ("Persons subject to U.S. jurisdiction are authorized to provide carrier

---

[8]  The facts are undisputed that MSC Cruises (USA) Inc. had no involvement in cruise operations to Cuba which did not travel to the United States. It did not sell tickets or communicate with the parent company about these cruises, and was expressly prohibited from being involved. *See* Opp. SUF ¶ 20. And HDC has not demonstrated any facts to the contrary.

services to, from, or within Cuba in connection with travel or transportation, directly or indirectly, **between the United States and Cuba** of persons, baggage, or cargo authorized pursuant to this part.") (emphasis added).   Judge Louis already held as much in her Order.   ECF No. 187 at 8-9 ("the OFAC regulations <u>do not govern the Cuba-to-Cuba cruises</u>" and therefore, "whether Defendants complied with the OFAC requirements" for Cuba-to-Cuba cruises is irrelevant).

Therefore, assuming *arguendo* that the Cuba-to-Cuba cruises are part of this case and are subject to the Helms-Burton Act, the inquiry into whether such cruises were "lawful travel" for purposes of alleged trafficking is not U.S. law at all.   And under either Cuban or Swiss law, MSC Cruises S.A.'s travel was lawful.   *See* Defs.' Omnibus MSJ at 6 (quoting ECF No. 212-16 at 13) (explaining that, under Cuban law, "the public, including cruise lines, could use the [Havana] piers to embark and disembark passengers"); Ex. 145, Expert Report of Benoit Merkt, at 5.   Dr. Benoit Merkt, a Swiss lawyer specializing in international economic sanctions, offers the unrebutted conclusion that there were no "Swiss laws, regulations, treaties or judicial opinions . . . prohibiting a Swiss company from operating or coordinating carrier or travel services to Cuba" or "from engaging in commercial activity in Cuba." *Id*. at 5. Switzerland's Secretariat for Economic Affairs confirmed this opinion too.   *See id.* at Ex. B.   Simply put, the Cuba-to-Cuba cruises were "lawful" under the only relevant measures of lawfulness that could possibly apply to them.

Uses of the Terminal for Cuba-to-Cuba cruises were also "necessary to" such lawful travel. Plaintiff's purported claim fails for the reasons raised in MSC Cruises' Omnibus and Individual motions for summary judgment establishing these elements of the lawful travel defense.   *See* Defs' Omnibus MSJ at 15–19; MSC Cruises' Indiv. MSJ at 6–9.[9]   Thus, this Court must only consider whether MSC Cruises S.A.'s US-Cuba cruises satisfy the lawful travel exclusion, which they do.

---

[9]   And although any claim based upon Cuba-to-Cuba cruises was never pled and fails as a matter of law, discovery to fully develop additional evidence specific to Cuba-to-Cuba cruises would likely identify additional reasons why the use of the Terminal was necessary to such lawful travel.   This would include, for example, evidence demonstrating that docking at the Terminal in Havana was additionally necessary for its activities connected to passengers beginning or ending their cruises such as transferring luggage that could not have occurred by tender or at a port without any passenger facilities.   But, as discussed above, this Court need not go down this road because Cuba-to-Cuba cruises are simply *not* a part of this case.

**III.    MSC Cruises S.A.'s Use of the Terminal for US-to-Cuba Cruises Is Not Trafficking**

**A.    MSC Cruises S.A.'s US-Cuba Cruises Constituted "Lawful Travel"**

For the reasons discussed at length in Defendants' Omnibus Motion and Omnibus Opposition, MSC Cruises S.A.'s use of the Terminal as part of its *Miami-based* cruises to Cuba constitutes lawful travel. *See* Defs.' Omnibus MSJ at 11–22; Defs.' Omnibus Opp. at 14–20. Critically, HDC does not challenge or contend in any way that MSC Cruises S.A. did not comply with the OFAC general licenses and authorizations. Nor does Plaintiff mention in its Motion that the U.S. Government repeatedly and unequivocally informed Plaintiff that the cruise lines' use of the Terminal in Havana fell within the scope of "the clear exclusion in Title IV's definition of 'traffics' of transactions and uses of property incident to lawful travel to Cuba." *See* Defs.' Omnibus MSJ at 19-21. In fact, at no point did the U.S. Government even suggest, let alone conclude, that the cruise lines' use of the Terminal constituted "trafficking." Plaintiff is not entitled to summary judgment in its favor on these issues; instead, MSC Cruises is.

**B.    Docking at the Terminal Was Incident to Lawful Travel**

The lawful travel exclusion is satisfied where, as here, the transactions and uses of confiscated property are "incident" to lawful travel to Cuba. "Incident" means "[d]ependent on, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)." INCIDENT, Black's Law Dictionary (10th ed. 2014); *see also* Defs.' Omnibus MSJ at 14-15. Plaintiff cannot—and, indeed, does not—contend that MSC Cruises' alleged transactions and use of the Terminal were not incident to its travel to Havana. Instead, Plaintiff argues that MSC Cruises' travel to Cuba was not ***lawful*** travel – but was instead "tourist travel" – thus making the issue of incident-use irrelevant. Motion at 11-13.[10] Plaintiff makes this argument by pointing to some of the shore excursions that MSC Cruises sold to passengers who traveled to Cuba to participate in "people-to-people" activities, and concluding that those shore excursions were tourist travel. Plaintiff is wrong.

---

[10]    HDC argues that MSC Cruises S.A. "used, leased and held [an] interest" in the Terminal , "engaged in commercial activities" by paying Aries pursuant to a contract to use the Terminal (which was never pled), and "participated in and profited from trafficking by Aries." ECF No. 225 at 3-5. It is undisputed that MSC Cruises S.A. paid Aries, the agency acting on behalf of the Cuban Government that operated the Terminal, to dock at the Terminal and did so pursuant to contracts with Aries. *See* SUF ¶ 36; Opp. SUF ¶¶ 53–54. But each of these references are simply different labels for the same transaction arising out of docking at the Terminal and, thus, must be considered collectively.

In September 2015, OFAC promulgated a regulation containing a "general license" authorizing cruise lines to transport to Cuba "[p]ersons subject to U.S. jurisdiction who are traveling to or from Cuba pursuant to a general license under one of the 12 categories of travel listed in §515.560 or under a specific license from [OFAC]." *See* 31 C.F.R. § 515.572(a)(2)(i); *see also* Note to 31 C.F.R. §515.572. One category is "educational activities." *See* 31 C.F.R. §515.572(a)(5). Among the authorized educational activities was "people-to-people travel," which is travel for "the purpose of engaging, while in Cuba, in a full-time schedule of activities intended to enhance contact with the Cuban people, support civil society in Cuba, or promote the Cuban people's independence from Cuban authorities." *See* 31 C.F.R. §515.565(b)(1).

As a threshold issue, Plaintiff's Motion intermingles shore excursions that MSC Cruises sold to passengers *solely* on Cuba-to-Cuba cruises and those references must be disregarded. Mot. at 10-11, bullets 1-2 (cherry-picking description excerpts for shore excursions available *only* on Cuba-to-Cuba cruises); *see also* Opp. SUF ¶ 56. As discussed above, Cuba-to-Cuba cruises are not a part of this case. Further, Cuba-to-Cuba shore excursions were *expressly* deemed by Judge Louis not to be governed by U.S. law. ECF No. 187 at 8. Thus, it is irrelevant whether those shore excursions are "tourism" or complied with people-to-people requirements.

With respect to those shore excursions that were offered on MSC Cruises' US-Cuba cruises,[11] which is the only relevant inquiry here, Plaintiff does not – and cannot – contend that those shore excursions do not qualify as people-to-people activities. In fact, Plaintiff does not even mention the criteria for people-to-people activities, much less attempt to explain how the shore excursions did not satisfy the people-to-people requirements. MSC Cruises' shore excursions on its US-Cuba cruises—which every U.S. passenger had to purchase in order to disembark in Havana if (s)he was not traveling pursuant to another OFAC-authorized category of travel—were designed to comply with the people-to-people educational requirements and, as shown even in the Motion's descriptions of those excursions, they undeniably enhanced passengers' contact with the Cuban people such that they were unlike any of the shore excursions offered in connection with other ports in the Caribbean. *See* SUF ¶¶ 23–24.

It is also important to note that although Plaintiff myopically focuses on passengers who went to Cuba to participate in MSC Cruises' shore excursions, which were designed as people-to-

---

[11] The shore excursions identified in bullets 3-7 on page 11 of Plaintiff's Motion were available on US-Cuba cruises.

people travel falling within the category of travel for educational activities, Plaintiff ignores the other 11 categories of travel for which a passenger could lawfully travel to Cuba aboard a cruise ship, and that passengers could also lawfully travel to Cuba under a special license issued directly to the passengers.  By saying nothing about passengers who traveled to Cuba pursuant to special licenses or those other categories of travel, Plaintiff concedes that MSC Cruises' transactions and uses of the Terminal was incident to those passengers' lawful travel to Cuba.

Instead of addressing the U.S. Government's authorization of people-to-people travel, Plaintiff cites a litany of dictionary definitions of the words "tourism" and "tourist," and concludes that proscribed tourist travel occurs when a person travels for "pleasure." Motion at 11-12.  This "pleasure standard" for gauging the lawfulness of travel fails for two reasons.

*First*, it is nonsensical and unworkable.  There is nothing in any of the governing authorities providing – let alone suggesting – that the lawfulness of travel to Cuba is determined by subjective notions of whether a traveler finds the trip pleasurable.  Equally baseless is the suggestion that it is somehow unlawful to travel for "pleasure."  Does that mean a person must be traveling for business, as opposed to traveling for pleasure?  Does that mean a traveler can lawfully travel to Cuba only if he or she plans to have a rotten time? Of course not.  The U.S. Government authorized MSC Cruises to transport people to Cuba so that they could undertake various categories of activities in Cuba, and whether someone finds those activities pleasurable is simply irrelevant.

*Second*, Plaintiff's resort to dictionary definitions is flawed.  The legal issue is not whether a passenger's activity constitutes "tourism" because the law both prohibits *and permits* activities in Cuba defined as tourism.  As discussed in greater detail in Defendants' Opposition to Plaintiff's Omnibus Motion for Summary Judgment (at 14–15, 19–20), Plaintiff relies heavily upon the Trade Sanctions Reform and Export Enhancement Act of 2000 (the "TSRA"), which provides that people cannot travel to Cuba for "tourist activities," and defines "tourist activities" as

> any activity with respect to travel to, from, or within Cuba that is not expressly authorized in subsection (a) of this section, in any of paragraphs (1) through (12) of section 515.560 of title 31, Code of Federal Regulations, or in any section referred to in any of such paragraphs (1) through (12) (as such sections are in were in effect on June 1, 2000).

*See* 22 U.S.C. § 7209(b)(2) (parenthetical in original); *see also* 22 U.S.C. §7209(b)(1) (providing that travel for tourist activities is not authorized).  In other words, the TSRA permits tourist activity that is within the scope of the defined categories.

As also discussed in Defendants' Opposition to Plaintiff's Omnibus Motion, people-to-people activities were expressly authorized in the regulations that were in effect on June 1, 2000, regardless whether they fall within the lay definition of "tourism."  *See* 31 C.F.R. § 515.560(5) (2000) (authorizing travel for "educational activities"); *id.* § 515.565(b)(2) (authorizing people-to-people activities as part of educational activities).  Thus, traveling to Cuba for people-to-people activities was definitionally ***not*** tourist travel, and it was, therefore, lawful for people to travel to Cuba on MSC Cruises' ship to participate in people-to-people activities once the U.S. Government authorized, in 2015, US-Cuba travel by cruise ship.  MSC Cruises' transactions and use of the Terminal were incident to its lawful travel to Cuba.  Plaintiff's Motion should be denied.

**C.    Docking at the Terminal was Necessary to Lawful Travel**

1.    "Necessary" Does Not Mean "No Other Alternative"

The lawful travel exclusion provides that trafficking "does ***not include*** . . . transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel."  22 U.S.C. § 6023(13)(B)(iii) (emphasis added).  The U.S. Government authorized the cruise lines to travel to any port in Cuba, including Havana – and Plaintiff's alleged property interests are confined solely to the Terminal in Havana – so the issue is whether MSC Cruises' transactions and use of the Terminal were necessary to the conduct of its travel to Havana.  *See* Defs.' Omnibus MSJ at 18.

The word "necessary" – in both its common usage *and* in the context of the lawful travel exclusion – does not mean "no other alternative," but instead means that the use is important, helpful, or appropriate to the conduct of the lawful travel at issue.  *See* Defs.' Omnibus MSJ at 15-18.  Plaintiff acknowledges this and cites decisions in which courts have held that "necessary" has a narrow meaning.  Mot. at 12-15.  However, Plaintiff's contention that "necessary" – as it is used in the lawful travel exclusion – means having "no other alternative" fails because it ignores the object of the exclusion.

As held in the decisions that Plaintiff cites, determining the meaning of a word must take into account the context and object of the statute in which the word is used.  *See, e.g., Vorchheimer v. Philadelphian Owners Assn.*, 903 F.3d 100, 107 (3d Cir. 2018) ("Each statute is different [] and the text, structure, or context of another provision may suggest a different interpretation or degree of necessity."); *Cinnamon Hills Youth Crisis Ctr., Inc. v. State George City*, 685 F.3d 917, 923 (10th Cir. 2012) (considering "the object of the statute's necessity requirement"); *GTE Service*

14

*Corp. v. Federal Communications Commission*, 205 F.3d 416, 424 (D.C. Cir. 2000) (rejecting a definition of "necessary" that "finds no support" in the language of the statute).

As more fully addressed in Defendants' Omnibus Motion (pp. 17-18), "necessary" is properly given a broad interpretation in the context of the lawful travel exclusion because Congress intended the exclusion to be read broadly. *See* 142 Cong. Rec. H1645-02, H1656, 1996 WL 90487 (explaining that the reason for adding the lawful travel exclusion was to "remove any liability for . . . *any activities* related to lawful travel") (emphasis added). The Act was never intended to punish or deter lawful travel to Cuba (or any conduct related to such travel). *See id.* at H1656 ("The definition of 'traffics' … has been modified to *remove any liability for* . . . *any activities related to lawful travel to Cuba*." (emphasis added)). Plaintiff's argument fatally overlooks this.

Plaintiff also argues that unless "necessary" means having no other alternatives, then all uses of the Terminal by a trafficker would be necessary uses. Mot. at 14-15. That is not true. MSC Cruises S.A. operates cruise ships, which makes the use of a pier necessary – that is, important, appropriate, and helpful – to its cruise travel. However, an airline's decision to maintain an office at the Terminal – and not at the airport – might not be important, appropriate, or helpful to the conduct of the airline's air travel to Havana. Transactions and uses that are necessary in connection with one mode of travel to Cuba, might not be necessary to a different mode of travel. The Court should reject Plaintiff's proposed definition and construction of the word "necessary."

2. <u>MSC Cruises Did Not Have Any Other Alternatives in Connection With its Lawful Travel to Havana</u>

Even if "necessary," as used in the lawful travel exclusion, meant "no other alternatives," MSC Cruises meets even that standard. Plaintiff argues that using the Terminal was not necessary to cruise *to Cuba*; that is, there are numerous port cities in Cuba and MSC Cruises could have traveled to Cuba without calling in Havana, thus making it unnecessary to use the Terminal. Mot. at 15-17. However, this argument fails because it misstates the lawful travel exclusion.

Under the exclusion, if the travel to Cuba at issue is lawful, then, to qualify for the exclusion, the transactions and uses must be "necessary to the conduct of *such* travel." 22 U.S.C. § 6023(13)(B)(iii) (emphasis added). Although the OFAC General Licenses allowed cruise lines to travel anywhere in Cuba, including Havana,[12] this action only concerns the cruise lines' voyages to Havana. Thus, the inquiry here is whether the cruise lines' transactions and uses of the Terminal

---

[12]     *See* 31 C.F.R. § 515.565, 31 C.F.R. § 515.572, 15 C.F.R. § 740.15, and 15 C.F.R. § 746.2.

were necessary to the conduct of the travel to ***Havana***, <u>not</u> whether the cruise lines' transactions and uses were necessary to conduct travel to the island at all.  *See Gatlin Oil Co. v. United States*, 169 F.3d 207, 211 (4th Cir. 1999) (quoting *Black's Law Dictionary* 1432 (6th ed. 1990)) (holding that the term "such" is limited to "the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent")); *see also* Defs.' Omnibus MSJ at 18.  Plaintiff's attempt to rewrite the exclusion requires circular logic.[13]

In tacit recognition of the futility of its argument, Plaintiff changes course and argues only three facts to support its argument that MSC Cruises S.A.'s use of the Terminal was not necessary to its authorized passenger cruises to Havana: (1) that *other* cruise companies sailed to other Cuban destinations besides Havana, (2) MSC Cruises S.A. sailed to both Havana and Isla de Juventud, and (3) MSC Cruises S.A. "received authorization to call THC (the Havana Container Terminal)." ECF No. 225 at 15–17.  The undisputed facts do not establish that MSC Cruises S.A. had alternatives to the Terminal.

*First*, MSC Cruises S.A. was **<u>required</u>** to sail to Havana to conduct cruises to Cuba.  HDC concedes that the only Cuban ports which "contained immigration services" were the Terminal, and the "ports of Cienfuegos and Santiago de Cuba."  ECF No. 225 at 15 (citing HDC's SOF ¶ 87).  The Cuban Government required that MSC Cruises S.A., and other cruise lines, sail to at least one of these port cities for each itinerary to conduct customs and immigration procedures on shore. *See* ECF No. 210-38 ¶ 19, *cited in* SUF ¶ 40 (Cuban Government required cruise lines to transport passengers to a port location with "passenger processing facilities mandated by the Cuban Government, such as for customs, immigration, and medical screening."); SUF ¶ 42 (quoting ECF No. 212-22 at 134:8-13) (Cuban Government "assigned for the cruise industry" Havana, Cienfuegos, and Santiago due to their "infrastructure").  It is undisputed that MSC Cruises S.A.'s fleet, including its smallest ships, was <u>too long</u> to sail to either of these non-Havana ports.  ECF No. 209 at 7-9.  Thus, sailing to Havana was the only option.

---

[13]     Indeed, saying that it was not necessary to use the Terminal because MSC Cruises did not have to travel to Havana is no different than saying it was not necessary to use the Terminal because MSC Cruises did not have to travel to Cuba at all.  Of course, that it not what the lawful travel exclusion examines or requires.  If travel to a specific place in Cuba is lawful – and, here, it was lawful for the cruise lines to travel to Havana – then the issue is whether the use of property is necessary to the conduct of "such" travel.

Furthermore, Plaintiff notes that another cruise line, Viking Cruise Line, docked its ships in the city of Cienfuegos and then took passengers on daytrips that involved between 7-8 hours on a bus ride for a single day excursion in Havana. *See* Mot. at 15; HDC's SOF ¶ 90. Viking Cruises did so because the Cuban authorities would not provide it with space at the Terminal. *See* MSC Cruises' SUF ¶ 37. The fact that Viking could only sail to Havana if it had authority to dock at the Terminal only underscores MSC Cruises' necessity arguments.

*Second*, Plaintiff's argument regarding Punta Frances (Isla de la Juventud) is irrelevant because MSC Cruises S.A. only sailed to Punta Frances as part of its *Cuba-to-Cuba cruises*, which are not part of this case. But even if these stops were at issue here, the fact that MSC Cruises S.A. stopped at Punta Frances does not undermine necessity. MSC Cruises S.A. was able to sail there for its Cuba-to-Cuba cruises because people-to-people regulations had no bearing on those cruises and, thus, MSC Cruises S.A. was not limited by those regulations. Crucially, it is undisputed that the Cuban Government demanded that MSC Cruises S.A. always travel to Havana *beforehand* to conduct immigration services as part of any Cuba-to-Cuba cruise that happened to have a brief stop at Punta Frances. Opp. SUF ¶ 109. And before any US-Cuba cruises began, MSC Cruises S.A. cancelled all of its stops at Punta Frances because it became clear that it was not feasible to continue to travel there due to the lack of infrastructure which rendered operations too dangerous. Opp. SUF ¶ 92. Thus, Punta Frances – and any location other than Havana – was not an alternative to Havana for MSC Cruises S.A.

*Third*, contrary to HDC's claim, MSC Cruises S.A. was **never** authorized by the Cuban Government to sail to the Havana Container Terminal ("TCH"). HDC relies upon a document written by an MSC Cruises captain reflecting notes from a June 3, 2015 meeting in Havana with the Cuban Government in which the Cuban Government was considering whether it would permit the *MSC Opera* to dock at the TCH temporarily until an additional mooring was installed at the Terminal, which was better suited for passenger cruises. HDC's SOF ¶ 88. At best, this was merely one step towards "authorization," but the facts are undisputed that the Cuban Government had not reached a final decision yet. Subsequently, MSC Cruises S.A. continued to request that Aries reach a final determination so MSC Cruises could plan its itineraries. SUF ¶ 34. Crucially, HDC omits from its Motion the undisputed fact that the Cuban Government ultimately reached its final decision *after* this June 3, 2015 meeting at a July 1, 2015 meeting at the Terminal. *See* ECF No. 210-38 ¶¶ 11–13, *cited in* SUF ¶ 35. At this meeting, MSC Cruises S.A. presented to Aries

how it could sail to the Terminal without construction of a new a mooring 'dolphin' – which was Aries' preference – and, immediately following the meeting, Aries informed MSC Cruises S.A. that (1) all of its berth requests were authorized at Pier No. 1 of the Terminal and (2) it was <u>not</u> authorized to sail to the TCH.  SUF ¶¶ 35–36 (citing ECF No. 210-38 ¶¶ 12–13).

 *Fourth*, even if this Court were to conclude that MSC Cruises S.A. received authorization to sail to the TCH, a passenger facility was required to be constructed at the TCH to receive and process passengers for customs and immigration procedures, however, no such facility was <u>ever</u> constructed or permitted to be constructed by the Cuban Government.  SUF ¶¶ 34–35.  Therefore, even if MSC Cruises S.A. could have, in theory, physically docked at the TCH, a passenger terminal was "necessary to" lawful cruise passenger services, and the TCH could not meet the objectives of conducting such passenger cruise travel.[14] Plaintiff has offered no evidence that the Cuban Government subsequently considered, let alone permitted, calls at TCH.

## IV. <u>MSCC USA and MSCC SA Co. Did Not Traffic Either</u>

 Neither of the U.S.-based subsidiaries committed trafficking either.  First, HDC silently drops any efforts to hold MSCC SA Co. liable because it is undisputed that it had no involvement in MSC Cruises S.A.'s cruise operations or use of the Terminal.  *See* ECF No. 225 at 4-5, 21 (describing trafficking only as to MSC Cruises S.A. and MSCC USA); SUF ¶ 8 (SA Co. has no business function).  Thus, summary judgment must be entered in MSCC SA Co.'s favor.

 And, this Court must reach the same result for MSCC USA.  MSCC USA's ticket support services in the United States cannot constitute a direct use of, or benefit from the use of, the Terminal – only MSC Cruises S.A. could have arguably used or benefitted from using the Terminal.  To hold otherwise, every financial institution, passenger, travel agent, payment processor, internet service provider, and any other participant in the transactions that led a passenger to sail on the cruise could be liable under the Helms-Burton Act.  Instead, MSCC USA could only be considered to have trafficked in the Terminal *through* MSC Cruises S.A., but this theory fails as well for two reasons: (1) HDC never alleged an indirect trafficking theory from one

---

[14] Plaintiff makes a passing reference that "anchorages in Cuba" are relevant. Mot. at 15. To the extent that this insufficient reference can be interpreted as an argument that MSC Cruises could have avoided using the Terminal by anchoring in the port of Havana and tendering passengers ashore, it also fails.  Even putting aside that any tenders also were required to dock at the Terminal, Plaintiff again ignores the undisputed evidence that the Cuban authorities would not allow MSC Cruises to anchor and tender passengers ashore, but instead required MSC Cruises to dock its ships at the Terminal (SUF ¶¶ 39–40).

MSC Cruises entity through another (here, MSC Cruises S.A), despite having all the opportunity to do so, and must be prohibited from doing so at summary judgment, *see* MSC Cruises' Indiv. MSJ at 14–15, and (2) MSCC USA's ticket support services were necessary to conducting passenger cruise services. *See id.* at 6, 13–14. The reason is obvious: without tickets sold, MSC Cruises S.A. could not carry passengers to Cuba pursuant to the OFAC General Licenses.

**V.    HDC Did Not Prove Intent**

**A.    MSC Cruises S.A. Did Not Know or Have Reason to Know the Terminal was HDC's "Confiscated Property"**

HDC cannot establish the *mens rea* element of trafficking. *See* ECF No. 209 at 11-14. With respect to the "knowing" component, HDC claims that it meets this element because "MSC knew the Havana Port Terminal was confiscated or subject to a claim." ECF No. 225 at 6. But the only evidence HDC cites to support its claim that MSC Crises S.A. knew the Terminal was confiscated is testimony from the President of *MSCC USA* (the U.S. sales subsidiary) stating that he was aware of the LIBERTAD Act. Not only does this testimony not establish knowledge of the Certified Claim or that HDC owned an interest in confiscated property, but Mr. Sasso never worked for MSC Cruises S.A., and MSCC USA had no involvement in operating cruises to Cuba or using the Terminal. Opp. SUF ¶ 25; SUF ¶¶ 5, 7. *See Glen v. Trip Advisor LLC*, 2021 WL 1200577, at *10 (D. Del. Mar. 30, 2021) (finding "unavailing" the argument that Defendants "'have reason to know' that the Subject Hotels are operating on confiscated properties because [it is common knowledge] '[t]hat the Castro regime expropriated property' . . . The general knowledge that some properties in Cuba were confiscated more than sixty years ago does not equate to constructive knowledge that the specific Subjected Properties involved in this case were confiscated. If it were otherwise, the knowledge element would be automatically satisfied for essentially any property located in Cuba, a proposition that is not consistent with the statute.").

Moreover, the undisputed evidence demonstrates that MSC Cruises did *not* have reason to know, based either on HDC's February 11, 2019 letter referencing the Certified Claim or the Certified Claim itself, that HDC's property interest extended beyond 2004 regardless of confiscation. *See* MSC Cruises' Indiv. MSJ at 11-14; *see also* Opp. SUF ¶ 28.

**B.    MSC Cruises S.A. Did Not Intentionally Use the Terminal Believing it Was Confiscated**

HDC also does not provide any evidence to satisfy the intent element. HDC claims that it is enough that MSC "intended that the port be the object of its commercial conduct." *See* ECF No.

225 at 6.  It is not disputed that MSC Cruises SA intended to use the Terminal when it docked there.  But that is not the end of the inquiry.  HDC must prove that MSC Cruises S.A. intended to use *confiscated property* and *without HDC's authorization.*

HDC cites to two cases that do not ultimately support HDC's argument. First, in *de Fernandez v. Seaboard Marine, Ltd.*, 2021 WL 3173213, *7-8 (S.D. Fla. July 17, 2021) (Bloom, J.), this Court held that plaintiff plausibly alleged scienter, for purposes of a motion to dismiss, through allegations that Seaboard Marine knew the Port of Mariel was confiscated and continued to travel there.  The Court endorsed a reading of scienter from another court and the second case cited by HDC, *Glen v. Trip Advisor LLC*, 2021 WL 1200577, at *10.  But *Glen* expressly states that a plaintiff must prove "knowledge of <u>all the elements listed in the statute</u>," as opposed to merely proving intent to engage in activity related to the Terminal.  The *Glen* court found persuasive several opinions holding the same.  *See, e.g., Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (complaint failed to allege knowledge because it did not "demonstrate that the Defendants knew the property was confiscated by the Cuban government nor that it was owned by a United States citizen"), *aff'd*, 835 F. App'x 1011 (11th Cir. 2021); *Glen v. Am. Airlines, Inc.,* No. 4:20-CV-482-A, 2020 WL 4464665, at *5 (N.D. Tex. Aug. 3, 2020), *vacated on other grounds,* 7 F.4th 331 (5th Cir. 2021) (rejecting plaintiff's interpretation because it would "render the 'knowingly and intentionally' language superfluous" and requiring Glen to allege that defendant "intended to traffic in confiscated property"). !

Under the appropriate scienter inquiry, HDC provides <u>no</u> evidence that MSC Cruises S.A. intended to use confiscated property that was owned by a U.S. national and without its authorization.  *See* ECF No. 225 at 6 (only citing evidence that MSC Cruises S.A. "specifically contracted with Aries for the right to use and occupy the port" to establish intent).  Indeed, around the very same time that MSC Cruises S.A. began cruising between the United States and Cuba in 2018, HDC's own president (and the great-grandson of the original HDC owner) was unsure whether HDC had any property right after 2004 since that is the time when its confiscated concession was set to expire.  *See* SUF ¶ 46.  Accordingly, HDC cannot establish either the "knowingly" or "intentionally" components of the scienter element.

### CONCLUSION

For all of the reasons above and set forth in the Omnibus Opposition, HDC's Motions for Summary Judgment must be denied, and MSC Cruises is entitled to summary judgment.

Dated: October 18, 2021                    Respectfully submitted,

                                           */s/ J. Douglas Baldridge*
                                           J. Douglas Baldridge (Fla. Bar No. 708070)
                                           Andrew T. Hernacki (admitted *pro hac vice*)
                                           Justin B. Nemeroff (admitted *pro hac vice*)
                                           VENABLE LLP
                                           600 Massachusetts Avenue
                                           Washington, D.C. 20001
                                           T: (202) 344-4703
                                           F: (202) 344-8300
                                           JBaldridge@venable.com
                                           ATHernacki@venable.com
                                           JBNemeroff@venable.com

                                           *Counsel for MSC Cruises*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, the foregoing was filed under seal with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being electronically served this October 18, 2021, on all counsel of record.

                                           */s/ J. Douglas Baldridge*
                                           J. Douglas Baldridge