UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-23588-CIV-BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

MSC CRUISES S.A.,
MSC CRUISES SA CO., and
MSC CRUISES (USA), INC.

    Defendants.

_____/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' *INDIVIDUAL* MOTION FOR SUMMARY JUDGMENT**

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Plaintiff Havana Docks Corporation ("Havana Docks" or "Plaintiff") responds to Defendants MSC Cruises (USA) Inc. ("MSC USA"), MSC Cruises SA Co. ("MSC SA Co."), and MSC Cruises S.A.'s ("MSC S.A."), (collectively, "MSC") Statement of Undisputed Facts in Support of Its Individual Motion for Summary Judgment (ECF No. 210), and provides an additional concise statement of material facts, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.

### RESPONSE TO MSC'S STATEMENT OF UNDISPUTED FACTS

1. Undisputed.

2. Undisputed that MSC S.A. operated cruise ships which traveled to Cuba beginning in December 2015, including cruises to Cuba from Miami from 2018 to 2019. (ECF No. 218-4, at 12[1] (RFA No. 25), at 16-17 (RFA Nos. 41-42), at 17-18 (RFA No. 46-48), at 28-30 (RFA Nos. 74-79); ECF No. 133, at ¶ 2.)

3. Disputed. From 2015 to 2019, MSC S.A. earned €247,024,000 million in net cruise revenues from its use of the Havana Port Terminal to embark and disembark passengers. (ECF Nos. 202-32, at 2; 218-16, at 2; 218-4, at 48-51 (RFA Nos. 122-129).) MSC S.A. did not apportion the residual value of its asset, the Armonia, to its cruises to Cuba as income. (ECF No. 201-6, at 197:12-199:2, 201:4-203-8; 202-34, at 5-6.) MSC S.A profited from its use of the Havana Port Terminal to embark and disembark passengers. (ECF No. 201-6, at 134:22-135:17; ECF No. 202-32, at 2-6; ECF No. 218-16, at 2.)

4. Undisputed.

5. Undisputed that MSC USA sold and marketed, in the United States, cruises offered by MSC S.A. anywhere in the world, including its cruises from Miami to Cuba. (ECF No. 201-1, at 16:12-17:22; ECF No. 201-6, at 17:25-19:5; ECF No. 133, at ¶ 4.) Moreover, it is undisputed that ECF No. 212-5, at 5 discusses renumeration based on the "Cost Plus Method."

6. Disputed. MSC "earned revenue from cruises on the MSC Armonia that docked at the Havana Cruise Port Terminal between November 2016 and June 2019." (ECF No. 218-4, at 19-20 (RFA No. 51).) MSC "earned revenue from its cruises on the MSC Armonia that used the

---

[1] Pinpoint citations to documents filed under seal shall refer to the PDF page number of those documents. Further, pinpoint citations to unsealed court filings refer to the file-stamped pagination found in the header of those documents.

2

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Havana Cruise Port Terminal as the homeport." (ECF No. 218-4, at 20 (RFA No. 52).) MSC "earned revenue from cruises on the MSC Opera that docked at the Havana Cruise Port Terminal between December 2015 and March 2019." (ECF No. 218-4, at 32 (RFA No. 83).) MSC "earned revenue from its cruises on the MSC Opera that used the Havana Cruise Port Terminal as the homeport." (ECF No. 218-4, at 32 (RFA No. 84).)

7. Undisputed that MSC USA's main function was to sell and market the cruises to Cuba on behalf of MSC S.A. from Florida. (ECF 201-1, at 158:5-12; ECF No. 201-2, at 35:5-9, 37:2-24.) *See also supra*, ¶ 5.

8. Disputed in part. It is undisputed that MSC SA Co. was administratively dissolved in September 2020. (ECF 218-19, at 2.) However, MSC SA Co. earned revenue from the cruises to Cuba. *See supra*, ¶ 6.

9. Disputed. This paragraph contains a legal conclusion, not a statement of material fact. *See* Local Rule 56.1(a); *Farina v. Sushi Takara, Inc.*, 2008 WL 11405985, at *1 (S.D. Fla. Jan. 7, 2008) ("legal conclusions are not proof of fact for purposes of summary judgment"). Therefore, the Court should disregard this statement and strike it. *See* Local Rule 56.1(d). Further, to the extent the Defendants have cited to legal authority in support of its alleged statement of fact, this is not compliant with the Court's Order (ECF No. 23, at 2-3) ("a statement of material facts must be supported by *specific* references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court."), or Local Rule 56.1(b)(1)(B), and for this reason the statement should also be stricken.[2]

10. Disputed in that the general license, which was issued without statutory authority and which did not release MSC from its obligation to comply with the LLIBERTAD Act, only permitted the transportation of passengers that were authorized to travel to Cuba under the Cuban Assets Control Regulations and who complied with those requirements. Notwithstanding, this paragraph contains a legal conclusion, not a statement of material fact. *See* note 2.

11. Disputed. This paragraph contains a legal a conclusion, not a statement of material fact. *See* note 2.

---

[2] Hereinafter, any time Havana Docks raises a legal conclusion objection, it adopts and incorporates by reference this argument and renews its request that the Court disregard and strike the alleged statement of fact.

3

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

12. Disputed. The general license was issued without statutory authority and which did not release MSC from its obligation to comply with the LLIBERTAD Act. Moreover, the Office of Foreign Assets Control ("OFAC") of the United States Treasury Department did not require MSC to cruise to Havana, Cuba or dock at the Havana Port Terminal. (ECF No. 218-4, at 12 (RFA No. 26-27); ECF No. 201-1, at 87:23-88:5; ECF No. 201-6, at 68:21-70:11, 104:16-22.) OFAC did not approve or authorize any Cuban port for use by a ship operated by MSC USA or MSC SA Co. (ECF No. 201-1, at 87:23-88:5.) The general license did not make it necessary for MSC to use the Havana Port Terminal. (ECF No. 201-6, at 69:22-70:11.) Moreover, MSC never requested or obtained the authorization of Havana Docks to use or operate on the Havana Port Terminal. (ECF No. 218-4, at 6-7 (RFA Nos. 10-12); ECF No. 201-2, at 143:10-13.) Further, this paragraph contains a legal conclusion, nota a statement of material fact. *See* note 2.

13. Undisputed that the MSC Armonia made 25 voyages from Miami, Florida to Havana, Cuba from December 2018 to June 2019. (ECF No. 218-4, at 16 (RFA No. 40).) Additionally, from December 2018 to June 2019, the MSC Armonia docked at the Havana Port Terminal on 50 calendar days. (ECF No. 218-4, at 17 (RFA No. 42).)

14. Disputed in part. Undisputed that the MSC Armonia docked and departed the Havana Port Terminal on June 2, 2019. However, the record cited does not support the statement that MSC S.A. ceased sailing to Cuba before the authorization to provide carrier services to Cuba was revoked on June 5, 2019.

15. Undisputed.

16. Disputed. The record cited does not support the statement of fact. Additionally, there existed itineraries for the MSC Armonia cruises to Cuba in 2016 and 2017 that included a stop at Isla de Juventud, Cuba; and, in fact, the MSC Armonia did stop at Isla de Juventud. (ECF No. 218-4, at 22 (RFA Nos. 57-58).)

17. Disputed. The record cited does not provide support for these statements of facts.

18. Disputed. *See supra*, ¶ 12. Additionally, the MSC Opera did not operate, nor purport to operate, under the authority of a general license when it homeported at the Havana Port Terminal. (ECF No. 201-6, at 109:1-17.)

4

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

19. Disputed. MSC S.A. did not have a policy to ensure that the passengers who disembarked from the MSC Armonia in Havana complied with the people-to-people regulations. (ECF Nos. 201-7, at 92:3-9; 202-47, at 64794; 201-2, at 116:4-117:16.)

20. Disputed in part.  Undisputed that MSC's website stated: "All guests . . . sailing from Miami on MSC Armonia will be required to: Participate in the people-to-people program each day the ship is in port OR qualify for one of other 12 categories of authorized travel to Cuba OR hold a specific license issues by OFAC." (ECF No. 210-20, at 2.)  However, *see supra*, ¶ 19. Moreover, ECF No. 212-10, at 18:10-21 and ECF No. 210-19, at 1 do not support the statement of fact. Lastly, Plaintiff objects to the record cited, ECF No. 210-18, at ¶ 7, as it contains inadmissible self-serving hearsay testimony for which the Defendant(s) cannot produce admissible evidence to support the statement of fact.  Fed. R. Civ. P. 56(c)(2), (4).  Therefore, the Court should not consider the record cited.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).[3]

21. Disputed.  ECF No. 212-22, at 1-2, ECF No. 210-23, at 1, and ECF No. 210-16, at 3 do not support the statement of fact and *see supra*, ¶ 19. Additionally, ECF No. 210-16, at 3 states: "The People to People program will not be required for segment AX20181201HAVMIA."  Further, Plaintiff objects to ECF No. 212-10, at 92:24-93:3 and ECF No. 212-2, at 201:12-202:7 as they contain inadmissible hearsay.  *See* note 3.

22. Disputed in part. Undisputed that the declaration of Ms. Iaccarino states this.  However, aside from this self-serving statement from the Ms. Iaccarino's declaration, there is no evidence to support this statement, and it is disputed that MSC or its passengers received, followed, or complied with the regulations and requirements for cruising to Cuba. Moreover, *see supra*, ¶ 19.

23. Disputed. MSC S.A. did not require a passenger who disembarked from the MSC Armonia in Havana to purchase a shore excursion. (ECF Nos. 201-7, at 92:10-94:20; 202-47, at 2.) Moreover, *see supra*, ¶ 19. Further, Plaintiff objects to ECF Nos. 212-9, at 200:19-201:3; 212-6, at 106:18-23, 111:15-19; 212-10, at 40:15-22 as they contain inadmissible hearsay.  *See* note 3. Lastly, ECF No. 212-10, at 40:15-22 does not support the statement of fact.

---

[3] Hereinafter, any time Havana Docks raises an inadmissible hearsay objection, it adopts and incorporates by reference this argument and renews its request that the Court not consider the record cited.

5

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

24. Disputed. MSC S.A. had no formal written policy to guide it in ensuring that shore excursions complied with people-to-people regulations. (ECF No. 212-10, at 102:3-9; ECF No. 201-2, at 116:4-117:9.) Additionally, MSC S.A.'s Shore Excursion Business Development Manager, Marialuisa Iaccarino, (ECF No. 201-7, at 10:21-11:3), did not know whether MSC S.A. conducted audits to determine whether shore excursions were, in fact, compliant with people-to-people regulations. (ECF No. 201-7, at 102:10-21.) Ms. Iaccarino also did not know what the Cuba restricted list was even though it was her role "to make sure that [MSC USA] understood [MSC S.A.'s] excursions, policy, and that [they] were correctly . . . promoted online." (ECF No. 201-7, at 102:22-103:9.) Further, Plaintiff objects to the cited deposition testimony of Ms. Iaccarino as they contain inadmissible hearsay. *See* note 3.

25. Disputed in part. Undisputed that Havana Docks gave Mr. Bengochea permission to represent it in correspondence with the U.S. Government on a case-by-case basis. (ECF No. 210-25, at 3; ECF No. 212-11, at 365 (Ex. 15 to Johnson Dep.); ECF No. 257-1, at 55 (RFA No. 183).) Disputed that ECF No. 210-24, at 1501, ECF No. 210-12, at 82:5-21, 74:16-21, 159:21-160:2, and ECF No. 212-13, at 90:6-11, 191:1-192:5 provide support for the statement of fact. Lastly, the record cited relate to Title IV of the LIBERTAD Act which is not at issue in this case; and, therefore, immaterial.

26. Disputed. ECF Nos. 210-24, at 4; 210-29, at 1; 212-14, at 21:25-22:5; 210-31, at 1; 210-32, at 2; 210-33, at 1 do not provide support for the alleged statement of fact, and Plaintiff objects to these records as they contain inadmissible hearsay. *See* note 3. Moreover, to be precise, the record cited at ECF No. 210-29, includes an e-mail dated August 2, 2018, from an individual named Deanna Kim, Acting Coordinator for the Office of Cuban Affairs at the U.S. Department of State ("Office of Cuban Affairs"), that includes the statement: "As previously discussed, given the clean exclusion in Title IV's definition of 'traffics' of transactions and uses of property incident to lawful travel to Cuba, we are not currently pursuing Title IV actions in relation to commercial cruise lines." (ECF No. 210-29, at 1.) However, Ms. Kim testified in her deposition that her email did not provide an opinion about, nor an interpretation of, the application of Title III of the LIBERTAD Act, 22 U.S.C. § 6091 to this litigation (ECF No. 212-14, at 22:6-14); that the Office of Cuban Affairs did not provide an opinion or expert testimony based upon information acquired by its employees in the scope and performance of their official Department duties to litigants that

6

do not include the United States or a party represented by the Department of Justice (ECF No. 212-14, at 11:11-12:1); that before sending her email she had never reviewed any records or evidence about Defendants' use of the Havana Port Terminal or whether Defendant had complied with any of the OFAC or the Department of Commerce's Bureau of Industry and Security ("BIS"), *id*. at 22:15-25:21; and, that she and her office also do not provide opinion or expert testimony about federal statutes, including about Title III of the LIBERTAD ACT in a lawsuit involving litigants that do not include the United States or a party represented by the Department of Justice.  (ECF No. 212-14, at 11:11-15:1, 15:11-19:16, 20:21-21:3.)

27. Disputed in part. Undisputed that Havana Docks engaged and authorized Jose Cardenas, Johnathan Slade, and Otto Reich to lobby on its behalf.  (ECF No. 257-1, at 51-52 (RFA Nos. 170-172).)  However, disputed that ECF No. 210-34, at 50-52 (RFA Nos. 170-172, 173, 175, 176) provides support for the purpose for which the lobbyists were engaged by Havana Docks. Moreover, MSC improperly cites to Havana Docks' June 30, 2021 responses to MSC's First Request for Admissions.  Amended responses were served on August 3, 2021, and the amended answer to RFA No. 175 is "denied."  (ECF No. 257-1, at 52 (RFA No. 175).)

28. Disputed.  The record cited does not provide support for the statement of fact.  *See also supra*, ¶ 26. Additionally, Plaintiff objects to ECF No. 210-33 at 1328 and ECF No. 212-14 at 22:2-22:5 as they contain inadmissible hearsay. *See* note 3.

29. Undisputed.  However, MSC S.A. had the option of obtaining a smaller vessel than the MSC Armonia for its cruises to Cuba. (ECF No. 201-6, at 116:6-117:4.)

30. Disputed.  Plaintiff objects to ECF Nos. 210-38 at ¶ 4; 212-15 at 86:2-6, 212-1 at 87:14-25 and 100:25-101:24 as they contain inadmissible hearsay.  *See* note 3. Additionally, ECF No. 212-16 at 29 contains a legal a conclusion, not a statement of material fact.  *See* note 2.

31. Disputed in part. Undisputed that Aries operated the Havana Port Terminal.  (ECF No. 218-4, at 40-41 (RFA No. 104).)  Disputed that the record cited provides support for the statement that Aries "was responsible for berthing operations in Havana, Cuba when MSC Cruises S.A. sailed there."

32. Disputed. MSC was not required to dock it ships at the Havana Port Terminal as it was provided with an alternative location.  (ECF Nos. 202-51, at 6; 202-52, at 2-3, 24.)  Additionally, Plaintiff objects to ECF Nos. 210-38 at ¶¶ 7, 15, 20; 212-9 at 113:13-25; 212-1 at 98:14-22,

7

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

114:17:22; 212-15 at 111:8-13, 134:9-20; 210-41 at 596, as they contain inadmissible hearsay. *See* note 3. Further, ECF Nos. 210-41, at 596; 210-42, at 79326; 201-18, at 2; No. 212-17, at 2; 210-38 at ¶¶ 7, 15, 20; 212-1 at 98:14-22, 114:17:22; 212-15, at 111:8-13 do not provide support for the statement of fact.

33. Disputed in part. Undisputed that, in 2015, MSC S.A. had discussions with the Cuban Government about docking its ships in Havana, Cuba and that MSC S.A. conducted technical investigations regarding locations in Havana where MSC S.A. could dock its ships. (ECF No. 202-51, at 3-7; ECF No. 202-52, at 2-5, 7-23; ECF No. 218-36, at 4.) Additionally, in 2015, the Cuban Government had already given MSC S.A. authorization to dock its ships at the Havana Container Terminal ("TCH"). (ECF No. 202-52, at 24.) Additionally, the record cited does not support the fact that the Havana Port Terminal and the TCH were the *only two* locations where MSC S.A. could dock its ships.

34. Disputed. After the conclusion of MSC S.A.'s technical assessments, it concluded that *both* the Havana Port Terminal and the TCH were viable options for the berthing of its ships. (ECF No. 218-23, at 4; ECF No. 201-8, at 104:21-107:4.)

35. Disputed. The Cuban Government had authorized MSC S.A. to dock its ships at TCH. (ECF No. 218-23, at 4; ECF No. 202-52, at 24.) Further, Plaintiff objects to each of the records cited as they contain inadmissible hearsay. *See* note 3.

36. Disputed. Each of the records cited do not provide support for the statement of fact. Additionally, Plaintiff objects to each of these records as they contain inadmissible hearsay. *See* note 3. *See also supra*, at ¶ 35.

37. Disputed. No one from the Cuban or U.S. government told or required MSC to cruise to Havana and/or use the Havana Port Terminal. (ECF No. 201-6, at 99:25-100:14.) Nor did the Cuban Government tell Carnival Corporation ("Carnival") that for a Carnival ship to cruise to Cuba it was necessary for the ship to dock at the Havana Port Terminal (ECF No. 218-32, at 155:9-15); nor did the Cuban Government require Royal Caribbean Cruises Ltd. ("Royal") to use the Havana Port Terminal in order to cruise to Cuba; (ECF No. 218-39, at 106:8-15, 111:15-22); nor did the Cuban Government require Norwegian Cruise Line Holdings, Ltd. to use the Havana Port Terminal in order to cruise to Cuba. (ECF No. 218-27, at 100:2-8, 157:19-22.) Further, the Cuban Government authorized MSC S.A. to dock its ships at the TCH. (ECF No. 218-23, at 4; ECF No.

8

202-52, at 24.) Tendering in the Port of Havana was approved by the Cuban Government in 2018. (ECF No. 218-21, at 5.) Notwithstanding, Plaintiff objects to ECF Nos. 212-19, at 139:21-141:19, 159:21-160:9; 212-20, at 174:9-22; 212-21, at 234:12-236:4; 212-22, at 193:23-196:3, 206:19-207:12; 212-23, at 12:17-20, 36:7-14, 77:2-6, 79:3-17, 80:15-81:5, 81:7-21, 83:4-6 as they contain inadmissible hearsay.  *See* note 3.

38. Disputed.  None of the records cited support the statement that a harbor pilot docked the MSC ships at the Havana Port Terminal.  Additionally, ECF No. 212-16, at 29-30 contains legal conclusions, not a statement of material fact.  *See* note 2.  Lastly, Plaintiff objects to ECF No. 210-48, at 3 and 212-15, at 87:18-88:3, 210-38, at ¶ 15 as they contain inadmissible hearsay.  *See* note 3.

39. Disputed. Cruise ships were allowed to anchor in the Port of Havana Anchorage No. 1 ("La Tasajera") and tender passengers during the same time frame that the MSC Armonia and Opera docked at the Havana Port Terminal.  (ECF No. 218-20, at 181:9-10, 183:5-184:6, 186:5-187:9, 188:10-189:3, 191:8-197:6, ECF No. 218-20, at 54 (Ex. 126 to Dep.), ECF No. 218-24, at 2-3, ECF No. 218-21, at 5, ECF No. 218-25, at 3.)  Additionally, the Cuban Government authorized the MSC Armonia and Opera to sail to Punta Frances, Isla de Juventud, Cuba and to take passengers to and from shore by tender boats.  (ECF 218-4, at 23 (RFA Nos. 59, 61), at 39 (RFA No. 100).) Further, ECF No. 212-16, at 30, citing to Res. 251 contains a legal conclusion, not a statement of material fact.  *See* note 2.  Plaintiff objects to ECF Nos. 210-48, at 5 (Rows 17 and 18; 212-1, at 86:15-87:25; 210-38, at ¶¶ 15, 17; 212-22, at 203:17-204:15, 205:8-13, 205:23-206:3, 206:4-18; 212-24, at 16:3-11, 18:6-15; 212-19, at 141:17-19 as they contain inadmissible hearsay. *See* note 3.

40. Disputed. This paragraph contains a hypothetical, not a statement of material fact.  Local Rule 56.1(a)(1) states, in relevant part, "[t]he movant's Statement of Material Facts shall list the *material facts* that the movant contends are not genuinely disputed."   (Emphasis added.)  Therefore, pursuant to Local Rule 56.1(d), this statement should be stricken for non-compliance with Local Rule 56.1 and the Court's Order (ECF No. 23, at 2).  Notwithstanding, MSC had the capability of constructing a tent, as it has done in Civitavecchia, Rome, for purposes of medical screening, immigration, and customs. (ECF No. 201-8, at 104:21-107:3; ECF No. 202-52, at 24; ECF No. 218-23, at 4.) Further, ECF 212-16, at 30 contains a legal conclusion, not a material

9

statement of fact. *See* note 2. Plaintiff objects to ECF No. 210-38, at ¶¶ 10, 19, ECF No. 210-48, at 8 as they contain inadmissible hearsay. *See* note 3. Lastly, ECF No. 210-48, at 8 does not support the statement of fact.

41. Disputed in part. Undisputed that, in 2015, MSC determined that MSC's ships, the Opera and Armonia, were too large to dock at Cienfuegos and Santiago de Cuba. However, there was nothing that limited MSC S.A. from ordering a ship that could go to either Santiago de Cuba, Cuba or Cienfuegos, Cuba. (ECF No. 201-6, at 116:6-117:4.) Further, Plaintiff objects to ECF Nos. 212-9, at 85:18-87:7, 113:13-114:14; 212-1, at 114:17-116:5 as they contain inadmissible hearsay. *See* note 3. Lastly, ECF Nos. 210-59, at 3 and 210-58, at 2-3 do not support the statement of fact.

42. Disputed. Plaintiff objects to each cited record as they contain inadmissible hearsay. *See* note 3. *See also supra*, ¶ 41.

43. Disputed in part. Undisputed that the ships listed in ECF No. 210-62, under section "Cruise Ships that Traveled to Cienfuegos" and under section "Cruise Ships that Traveled to Santiago de Cuba" were at least 45 meters shorter than the Armonia. Disputed that ECF No. 210-62 is an exhaustive list of cruise ships that sailed to Cuba.

44. Disputed in part. Undisputed that Mr. Jerry Johnson testified that he was not aware of any alternatives for MSC to dock in the Port of Havana, other than using the Havana Port Terminal. However, Mr. Johnson also testified that he did not look into the issue as to whether there were alternatives. (ECF No. 212-13, at 150:2-4.)

45. Disputed in part. Undisputed that MSC had actual knowledge of the Certified Claim and the Cuban Government's confiscation of the Havana Port Terminal on or about February 11, 2019. MSC, however, has had reason to know of the Certified Claim since the entry of the final decision on September 8, 1971, Certified Claim CU-2492, which has been publicly available in the records of the Foreign Claims Settlement Commission. (ECF Nos. 41-8; 218-38, at 2-3; 201-1, at 43:8-11, 48:19-49:12; 135:8-136:4; *see also* J. Stmt. of Comm. of Conf., 142 Cong. Rec. H1645-02 at H1660.)

46. Disputed. *See* ECF No. 212-12, at 48:6-49:21.

10

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## ADDITIONAL STATEMENT OF FACTS

47. OFAC never granted MSC a specific license to operate its cruises to Cuba or use the Havana Port Terminal. (ECF No. 201-6, at 133:12-18; ECF No. 218-4, at 12-13 (RFA Nos. 28-31).)

48. MSC's cruise passengers cleared customs and immigration on the first floor of the Havana Port Terminal. (ECF No. 201-3, at 19:2-22:24.)

49. No one from the Cuban government told MSC that it could not go to any other port besides Havana. (ECF No. 201-6, at 100:15-18.)

50. MSC USA prepared a ticket pricing and passenger expectancy proposal for the U.S.-Cuba cruises that "would be very attractive" and MSC "could get very good prices and . . . a significant number of passengers" as "the other three major companies were offering cruises from the U.S. to Cuba with very good results that [MSC] could upsell." (ECF No. 201-2, at 59:20-60:20, 60:25-61:10.) The proposal was ultimately approved by MSC S.A. (ECF No. 201-2, at 61:11-17, 64:19-65:2.)

51. MSC's ships could have anchored offshore at Cienfuegos and tendered in its passengers as Royal did. (ECF No. 210-58, at 3.)

52. The Opera used the Havana Port Terminal as a homeport in 2015, 2016, 2017, 2018, and 2019. (ECF Nos. 218-4, at 28-30 (RFA Nos. 74-78); 201-6, at 21:11-22:14; 202-30, at 3.)

53. The Armonia used the Havana Port Terminal as a homeport in 2016, 2017, and 2018. (ECF Nos. 201-6, at 22:15-23:5; 218-4, at 21-22 (RFA Nos. 54, 55, 56).)

54. The Opera homeported in Havana at the Havana Port Terminal from 2015 through March 2019 overlapping with the Armonia's cruises from Miami to the Havana Port Terminal that took place from December 2018 through June 2019. (ECF Nos. 201-6, at 19:25-24:11; 218-16, at 2-3; 218-15, at 2-3.)

55. Between 2016 and 2018, the Armonia made 65 voyages from Havana, Cuba to Havana, Cuba and docked at the Havana Port Terminal. (ECF No. 218-5, at 2-3 (Interrog. No. 2); ECF No. 218-16, at 2-3.)

56. The Armonia made 16 voyages to Havana on or after February 11, 2019. (ECF No. 218-4, at 18 (RFA No. 47).)

11

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

57. Between 2015 and 2019, the Opera made 100 voyages from Havana, Cuba to Havana, Cuba, and docked at the Havana Port Terminal.  (ECF No. 218-16, at 2.)

58. The Armonia docked at the Havana Port Terminal on 32 calendar days after February 11, 2019.  (ECF No. 218-4, at 18 (RFA No. 48).)

59. Between 2015 and 2019, the Opera and Armonia docked at the Havana Port Terminal on all their voyages to Havana, Cuba. (ECF Nos. 218-4, at 18 (RFA No. 45), at 28 (RFA No. 73); 218-4, at 16-17 (RFA Nos. 40-42), at 18-19 (RFA No. 46-49); 201-6, at 134:13-135:17; 201-5, at 49:4-18, 50:18-21; 218-4, at 28-30 (RFA Nos. 74-78); 201-6, at 21:11-22:14; 202-30, at 3.)

60. Between 2015 and 2019, the Opera docked at the Havana Port Terminal to embark and disembark passengers in Havana. (ECF No. 218-4, at 28-30 (RFA Nos. 74-79), at 31 (RFA No. 81); ECF No. 201-6, at 134:13-135:17; ECF No. 201-5, at 49:4-49:18.)

61. The Opera docked at the Havana Port Terminal after February 11, 2019.  (ECF No. 218-4, at 30 (RFA No. 79).)

62. The Armonia docked at the Havana Port Terminal after February 11, 2019.  (ECF No. 218-4, at 18 (RFA No. 46).)

63. Between December 2018 and June 2019, the Armonia docked at the Havana Port Terminal to embark and disembark passengers in Havana. (ECF No. 218-4, at 16-17 (RFA Nos. 40-42), at 18-19 (RFA No. 46-49); ECF No. 201-6, at 134:13-135:17; ECF No. 201-5, at 49:4-18, 50:18-21.)

64. The Armonia last docked at the Havana Port Terminal on June 2, 2019. (ECF No. 218-1, at 4 (Resp. to Supp. Interrog. Ans. No. 3(c)).)

65. From December 2018 through June 2019, a total of 51,908 passengers sailed on cruises to Havana, Cuba by the Armonia.  (ECF No. 218-4, at 17-18 (RFA No. 44).)

66. MSC USA marketed and sold tickets for cruises on the Armonia that docked at the Havana Port Terminal. (ECF No. 201-1, at 134:4-139:1, 141:17-24, 157:8-160:5; ECF No. 218-4, at 52 (RFA No. 130).)

67. MSC S.A. developed, approved, and sold shore excursions to its passengers aboard the Opera and Armonia in Havana, and contracted with Agencia Viajes Cubanacan S.A. ("Cubanacan") to operate shore tourist excursions in Havana (ECF Nos. 201-7, at 34:1-18; 35:1-40:22, 85:10-87:4, 90:12-24; 218-9, at 3-76; 218-4, at 45-46 (RFA Nos. 115-117), including going to the beach and a beach complex (ECF Nos. 218-17 at 4-5; 218-9, at 64; 218-8, at 3; 201-7, at

35:24-36:13; 218-11, at 4; 218-8, at 2-3; 218-18, at 4; 202-43, at 3; 202-40, at 2), spending a night at the Tropicana Cabaret, (ECF Nos. 218-10, at 2; 202-43, at 37), watching a show at the Habana Café (ECF No. 202-43, at 37), traveling around Havana's historical city scape in a vintage car (ECF No. 202-43, at 37), visiting the Fortaleza de San Carlos de la Cabana (202-43, at 38), sightseeing in Havana (202-43 at 38), and participating in a walking tour of Havana (ECF No. 202-43, at 39.)

68. MSC sold its passengers shore excursions that it designed purporting to be "people-to-people educational experiences" and marketed as complying with the OFAC regulations. (ECF Nos. 202-43, at 3; 202-40, at 2; 201-7, at 43:10-22, 51:3-52:11; 202-42, at 2-3.)

69. MSC S.A. disembarked passengers from the Armonia at the Havana Port Terminal for shore excursions in Havana. (ECF Nos. 218-4, at 19 (RFA No. 49), at 38 (RFA No. 99), at 45 (RFA No. 116).)

70. From 2015 to 2019, MSC S.A. earned €21,614,000.00 from the sale of shore excursions to its passengers aboard the Opera and Armonia that docked at the Havana Port Terminal. (ECF Nos. 218-16, at 2; 218-15, at 2; 218-4, at 18 (RFA No. 45), at 28 (RFA No. 73).)

71. MSC S.A. did not require its passengers aboard the Armonia, in voyages from Miami to Havana, to purchase a shore excursion prior to disembarking in Havana. (ECF No. 201-7, at 92:3-93:13.)

72. Cubanacan was a part of the Cuban Government's Ministry of Tourism. (ECF No. 201-3, at 202:7-15; ECF No. 201-7, at 34:1-34:18, 39:19-40:3.)

73. As part of Cubanacan's shore excursion operation, it provided ground and transportation services to and from the Havana Port Terminal for MSC S.A. passengers. (ECF No. 201-6, at 146:4-25, ECF No. 218-9, at 5-6.)

74. Shore excursions offered in Havana to passengers on the Opera and Armonia began and ended at the Havana Port Terminal, where passengers disembarked and embarked the vessel. (ECF No. 201-7, at 73:19-74:21.)

75. Between December 16, 2016 and June 28, 2019, MSC S.A. paid Cubanacan at least $7,623,480.37 for shore excursions offered to passengers on the Armonia and Opera. (ECF No. 218-4, at 46 (RFA No. 117); ECF No. 218-2, at 3-41 (Interrog. Nos. 3(l), 5, 6); ECF No. 218-3, at 7 (Interrog. C).)

13

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

76. MSC cruises that operated on the Havana Port Terminal offered nightly dance parties, gambling at a casino, comedy shows, specialty dining, onboard spa treatments, an onboard waterpark, arcade games, and unlimited drink packages to its passengers. (ECF No. 257-2, at 704-710, 712, 716; ECF No. 257-3, at 778; ECF No. 257-4, at 943.)

77. MSC provided the following information on its website regarding its people-to-people program: "Once you have completed your people-to-people shore excursion, you may explore Cuba at your own leisure." (ECF No. 210-19, at 2; ECF 202-47, at 2.)

78. MSC S.A. did not educate its passengers about the lack of political freedoms. (ECF No. 201-3, at 206:3-207:3.)

79. The MSC S.A. passengers did not interact with any Cuban individual who did not support the Cuban Government or receive presentations about the lack of political freedom in Cuba during their shore excursions. (ECF No. 201-3, at 202:16-203:13.)

80. The MSC S.A. passengers were not informed of the human rights violations that existed in Cuba during the time that the passengers went onshore to participate in shore excursions. (ECF No. 201-3, at 203:25-204:13.)

81. MSC only paid people or entities in Cuba that were associated with the Cuban Government. (ECF No. 218-4, at 47-49 (RFA Nos. 120-122).)

82. Between 2015 and 2019, MSC S.A. entered into contracts with Aries, the department or agency of the Cuban Government that operates the Havana Port Terminal, for the Opera and Armonia to dock at the Havana Port Terminal and other Cuban ports. (ECF No. 218-4, at 40-41 (RFA Nos. 102-106); ECF No. 218-13, at 3-17; ECF No. 218-12, at 2-19; ECF No. 201-6, at 135:18-136:21, 153:24-160:25, 161:23-162:8.)

83. MSC S.A. contracted with Agencia Maritima Mapor S.A. ("Mapor"), the port agent for the Cuban Government. (ECF No. 218-4, at 43 (RFA No. 110, 111); ECF No. 201-6, at 145:2-11; ECF No. 218-14, at 2-15.)

84. MSC S.A. paid Aries indirectly through Mapor for fees charged for use of the Havana Port Terminal by the Opera and Armonia for docking and the embarkation and disembarkation of passengers. (ECF No. 218-3, at 7-8 (Ans. to Interrog. C).)

85. The Cuban Government authorized MSC S.A. to berth the Opera at the Havana Container Terminal. (ECF No. 202-52, at 24; ECF No. 202-51, at 3, 6; ECF No. 218-23, at 4.)

14

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

86. The Opera and Armonia were capable of anchoring offshore and tendering passengers to shore, as they did at Punta Frances, Isla de Juventud, Cuba.  (ECF No. 218-4, at 22-24 (RFA Nos. 57, 59-61), 24 (RFA Nos. 62, 63), and 33-35 (RFA No. 85, 89-91); ECF No. 201-3, at 34:9-35:1; ECF No. 201-6, at 76:23-77:17; ECF No. 201-5, at 49:4-15.)

87. Cubanacan developed the shore excursions that MSC offered its passengers who disembarked MSC's ships at the Havana Port Terminal.  (ECF No. 201-7, at 86:6-15.)

88. The Cuban Ministry of Foreign Affairs ("MINREX") approved MSC's shore excursion descriptions. (ECF No. 201-7, at 87:13-88:2.)

Dated:  October 18, 2021.                    Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: s/  Roberto Martínez
Roberto Martínez
Florida Bar No. 305596
Bob@colson.com
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Aziza F. Elayan-Martínez
Florida Bar No. 92736
aziza@colson.com
Zachary A. Lipshultz
Florida Bar No. 123594
zach@colson.com
Thomas A. Kroeger
Florida Bar No. 19303
tom@colson.com
Sabrina S. Saieh
Florida Bar No. 125290
sabrina@colson.com
– and –

**MARGOL & MARGOL, P.A.**

15

        2029 3rd Street North
        Jacksonville Beach, Florida 32250
        Telephone: (904) 355-7508
        Facsimile: (904) 619-8741

        Rodney S. Margol
        Florida Bar No. 225428
        Rodney@margolandmargol.com

*Attorneys for Plaintiff Havana Docks Corporation*

16

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed under seal with the Clerk of the Court. I also certify that the foregoing document will be served on the 18th day of October, 2021, on all counsel of record or pro se parties via electronic mail.

By: s/ Roberto Martínez
Roberto Martínez

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444