**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No. 19-23588-CIV-BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

<div style="margin-left:2em">*Plaintiff*,</div>

v.

MSC CRUISES (USA) INC.,
MSC CRUISES SA CO. and
MSC CRUISES S.A.

<div style="margin-left:2em">*Defendants*.</div>

## MSC CRUISES' REPLY STATEMENT OF MATERIAL FACTS

Defendants MSC Cruises S.A., MSC Cruises SA Co., and MSC Cruises (USA) Inc. (collectively, "MSC Cruises") pursuant to Local Rule 56.1, reply to Plaintiff's Additional Statement of Facts as follows.

**47.**    Undisputed.[1]

**48.**    Undisputed.

**49.**    Disputed.  MSC Cruises S.A. concluded (and the Cuban Government agreed) its ships could not feasibly travel to any other port in Cuba besides Havana.  *See* ECF No. 201-3, at 85:18–87:14, 113:13–114:14 (Aries told Onorato that "Havana was the only option").

**50.**    Disputed as phrased. Undisputed that MSCC USA prepared the proposal for MSC Cruises S.A., but not for MSCC USA itself, since it did not earn revenues based on tickets sold on cruises.  *See* ECF No. 201-1 at 139:12-20.  Also undisputed that MSC Cruises S.A. approved this proposal, however, MSC Cruises S.A. ultimately did not profit from its cruises that included stops in Havana, Cuba.  *See* ECF No. 218-15 at 2; ECF No. 218-16 at 2.

**51.**    Disputed.  All MSC Cruises' vessels, including MSC Armonia, were too large to sail into the channel of Cienfuegos either to dock or anchor.  *See* ECF No. 210-38 at ¶ 6; ECF No. 201-3, at 85:18–87:7, 113:13–114:14 (Aries told Onorato that "Havana was the only option"), 142:4-12; ECF No. 201-8, at 77:25–78:2; *id.* at 133:2-18; ECF No. 201-6, at 114:17–116:5 (MSC Cruises S.A. port operations confirmed that "Santiago and Cienfuegos were not suitable for our ships.").  The only evidence cited by HDC—ECF No. 210-58 (a January 2019 MSC Cruises internal email)—reflects that, after Mark Zeller (MSCC USA's Vice President of U.S. Hotel Operations) asked about the possibility of tendering at Cienfuegos, which he said was "maybe far-fetched," he was promptly corrected that doing so was not feasible.  *See* ECF No. 210-58, MSCCUSA0000069108, at 109-110 (1/16/19 email from MSC Cruises' Vice President of Port Operations Captain Luigi Pastena: "We cannot go in any place in Cuba except Havana."); *see also* ECF No. 210-59, MSCCUSA0000069734 at 736 (1/18/19 email from Mariella Castellano: "Dear Mark . . . be informed that Cienfuegos is not feasible.").

**52.**    Undisputed.  *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.[2]

**53.**    Undisputed.  *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

**54.**    Disputed as phrased.  Undisputed that the Opera homeported at the Havana Port Terminal from 2015 through March 2019 in connection with cruises that did not travel to or from the United States ("Cuba-to-Cuba Cruises"), and that this overlapped with the Armonia's U.S.-to-Cuba cruises.  *See* ECF No. 201-6 at 19:25-24:11; ECF No. 218-16 at 2; ECF No. 218-15 at 2-3.  *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

---

[1] MSC Cruises interprets the undefined term "Havana Port Terminal" to mean the Havana Cruise Port Terminal (the "Terminal") as used by MSC Cruises in its Omnibus Mot. for Summ. J. and Statement of Mat. Facts Not in Dispute (*see* ECF Nos. 216, 217), and applies that definition.
[2] ECF No. 253, MSC Cruises' Opp. St. of Undisputed Mat. Facts at 3–4 & 4 n.2 (Resp. to ¶ 31).

**55.**   Undisputed.  *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

**56.**   Undisputed.

**57.**   Undisputed, however, this fact is not material to the trafficking theory HDC pleaded regarding Miami to Cuba cruises.  *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

**58.**   Undisputed.

**59.**   Undisputed.

**60.**   Disputed as phrased.  Undisputed that between 2015 and 2019, the Opera docked at the Havana Port Terminal to embark and disembark passengers in Havana in connection with Cuba-to-Cuba Cruises.  *See* ECF No. 218-4, at 28-30 (RFA Nos. 74-79), at 31 (RFA No. 81); ECF No. 201-6, at 134:13-135:17; ECF No. 201-5, at 49:4-18.

**61.**   Undisputed, however, this fact is not material to the trafficking theory HDC pleaded regarding Miami to Cuba cruises.  *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

**62.**   Undisputed.

**63.**   Undisputed.

**64.**   Undisputed.

**65.**   Disputed as phrased.  Undisputed that from December 2018 through June 2019, a total of 51,908 passengers are listed on the manifests as having embarked on a cruise from Miami to Havana by the MSC Armonia.  *See* ECF No. 218-4 at 17-18 (RFA No. 44).

**66.**   Disputed as phrased.  Undisputed that MSC Cruises (USA) Inc. marketed and sold tickets for U.S.-to-Cuba cruises between December 2018 and June 2019 that docked at the Havana Port Terminal.  *See* ECF No. 201-1, at 134:4–138:25, 141:17-24, 157:8–160:5; ECF No. 218-4, at 52 (RFA No. 130).  However, MSC Cruises clarifies that MSC Cruises (USA) Inc. did not market or sell tickets for—and was prohibited by MSC Cruises S.A. from having any involvement with—Cuba-to-Cuba Cruises.  *See* ECF No. 201-1 at 188:18–189:10; ECF No. 201-3 at 162:8–164:12, 165:5-8, 166:2–167:9 (Cuba-to-Cuba "cruises ha[ve] never been authorized to be sold in US by [] MSC USA Inc.").

**67.**   Disputed as phrased.  Undisputed that MSC Cruises S.A. contracted with Cubanacan to operate shore excursions in Havana that MSC Cruises S.A. developed, approved, and sold to passengers on the MSC Armonia in connection with U.S.-to-Cuba cruises.  *See* ECF No. 218-4 at 45-46 (RFA Nos. 115-116).  Disputed that the shore excursions offered in connection with U.S.-to-Cuba cruises were "tourist" excursions because all of the shore excursions offered in Havana on U.S.-to-Cuba cruises were developed and operated in accordance with the OFAC General Licenses.  *See* ECF No. 201-7 at 43:10-22, 51:3-25, 52:7-11, 85:24–86:5, 86:11-15, 91:11-15; 80 Fed. Reg. 56916; 31 C.F.R. § 515.572(a)(2)(i); 80 Fed. Reg. 56,898; 15 C.F.R. § 740.15 & § 746.2 (the "General Licenses").  Disputed that MSC

2

Cruises S.A. offered shore excursions that included "going to the beach" on its U.S.-to-Cuba cruises. *See* ECF No. 218-3 at 10-11 (Interrog. G); ECF No. 253-2 (MSCCUSA0000058302 at 330–333) and ECF No. 253-3 (MSCCUSA0000046952 at 978–981/MSCC0000039350 at 376–379) (listing all shore excursions in Havana on U.S.-to-Cuba cruises, none of which included "going to the beach").  The complete descriptions of the shore excursions offered in Havana on U.S.-to-Cuba cruises are listed at ECF No. 253-2 and ECF No. 253-3.  To the extent this asserted fact addresses shore excursions in Havana offered on Cuba-to-Cuba Cruises, it is not material to HDC's pleaded trafficking theory regarding Miami to Cuba cruises.  *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

68.　　Disputed as phrased.  MSC Cruises S.A. sold its passengers shore excursions that were designed and marketed as complying with the OFAC regulations and were implemented as marketed. *See* ECF No. 201-7 at 43:10-22, 51:3-25, 52:7-11, 85:24–86:5, 86:11-15, 91:11-15.

69.　　Undisputed.  *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

70.　　Undisputed, however, to the extent this fact concerns Havana shore excursions on Cuba-to-Cuba Cruises, it is not material to HDC's pleaded trafficking theory regarding Miami to Cuba cruises. *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ; *see also* ECF No. 198 at 8.

71.　　Disputed as phrased.  To disembark in Havana, passengers on MSC Cruises' U.S.-to-Cuba cruises were required to attest in a passenger declaration that they were traveling pursuant to, and participating in, one of the 12 categories of authorized travel permitted by OFAC, the most frequently-used of which was the "people-to-people" exchange category of travel.  For those traveling under this authorized type of travel, passengers *were* required to purchase a "people-to-people"-compliant shore excursion before disembarking in Havana.  *See* ECF No. 210-18, Iaccarino Decl. ¶ 11; ECF No. 210-19, MSCCUSA0000075233 at 233; ECF No. 210-20, HDC-MSC 000056 at 057; ECF No. 210-23, MSCCUSA0000079064 at 064–065; ECF No. 202-42, MSCCUSA0000079694 at 694; ECF No. 201-2 at 106:18-23; *id.* at 111:15-19; ECF No. 201-7 at 40:15-22, 97:13-16; ECF No. 201-3 at 200:19–201:3.

72.　　Undisputed.

73.　　Undisputed.

74.　　Undisputed.  However, shore excursions offered in Havana to passengers on cruises by the Opera and on cruises by the Armonia prior to December 10, 2018—none of which sailed to or from the United States—are not material to the trafficking theory HDC pleaded regarding Miami to Cuba cruises.  *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

75.　　Undisputed.  *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

76.　　Disputed as phrased.  The on-board entertainment and amenities described in Paragraph 76 were offered exclusively on the ship, not on the Havana Port Terminal itself or onshore in Havana.

Moreover, to the extent that this fact addresses on-board entertainment and amenities offered on Cuba-to-Cuba Cruises, it is not material to HDC's pleaded trafficking theory regarding Miami to Cuba cruises. *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

77. Disputed as phrased. Undisputed that the language quoted in Paragraph 77 appeared on MSC Cruises' website of its U.S.-to-Cuba cruises for a limited time. *See* ECF No. 210-19, at 2. The email cited by Plaintiff attached and discussed MSC Cruises S.A.'s marketing documents dated "13Nov2018," a month before the US-Cuba cruises began. (ECF No. 210-19). However, it was not actually MSC Cruises' policy or practice to permit or encourage passengers to explore Cuba at their own leisure after completing shore excursions, and MSC Cruises S.A. informed each passenger that it was the responsibility of each passenger to comply with the category of travel under which (s)he had declared that (s)he was traveling when in Havana. *See* ECF No. 201-7 at 98:20–100:24 (clarifying that statements made by Mark Zeller in the December 11, 2018 email cited in ¶ 77, *see* ECF No. 202-47 at 2, were "incorrect," and that "this was really just the beginning of the season. So there was just a misunderstanding . . . ."); ECF No. 201-7 at 92:20-21 (Iaccarino Dep.) ("[W]e inform them that individual exploration . . . could not happen.").

78. Disputed as phrased. In the cited testimony, MSC Cruises S.A. CEO Giovanni Onorato only states that he is "not aware" if any passengers were educated on this.

79. Disputed as phrased. In the cited testimony, MSC Cruises S.A. CEO Giovanni Onorato only states that he is "not aware" if any passengers did this.

80. Disputed as phrased. In the cited testimony, MSC Cruises S.A. CEO Giovanni Onorato only states that he is "not aware" if any passengers were informed of this.

81. Disputed as phrased. Undisputed that the only persons or entities in Cuba to which MSC Cruises S.A. made payments in connection with its U.S.-to-Cuba cruises were COMAR, Mapor, and Cubanacan. To the extent this alleged fact addresses payments made in connection with Cuba-to-Cuba Cruises, it is not material to HDC's pleaded trafficking theory regarding Miami to Cuba cruises. *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

82. Disputed as phrased. Undisputed that MSC Cruises S.A. entered into contracts with Aries, which acted on behalf of the Cuban Government, in connection with the Armonia's U.S.-to-Cuba cruises only for the Armonia to dock at the Havana Port Terminal. *See* ECF No. 212-18, MSCCUSA0000079403 at 404. Disputed that MSC Cruises S.A. entered into contracts with Aries for its ships to dock at any "other Cuban ports" besides the Havana Port Terminal. *See* ECF No. 218-4, at 41 (RFA No. 105); ECF No. 202-31, at MSCCUSA0000079403–420; ECF No. 201-6 at 158:5–160:22. To the extent that HDC refers to certain contracts with Aries that also permitted MSC Cruises S.A. to

4

sail to Punta Frances, Isla de la Juventud, MSC Cruises clarifies that (a) those contracts were entered into in connection with Cuba-to-Cuba Cruises, which are not material to the trafficking theory that HDC pleaded regarding Miami to Cuba cruises, *see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ, and (b) Punta Frances is not a "port," but rather is an isolated beach destination.  *See* ECF No. 201-6 at 77:2-4; ECF No. 201-5 at 12:6-10; ECF No. 201-3 at 28:16-18.

83.    Disputed as phrased.  Undisputed that MSC Cruises S.A. entered into contracts with Mapor, however, Mapor served as MSC Cruises' port agent in Havana.  *See* ECF No. 218-4, at 44 (RFA No. 114); ECF No. 201-6, at 90:10-11, 145:2-11, 147:23–148:1; ECF No. 201-8 at 65:6-7.

84.    Undisputed. *But see* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

85.    Disputed.  *See* ECF No. 210-38 ¶¶ 10-16; ECF No. 201-3 at 111:16-18; *id.* at 113:13-25; ECF No. 201-8 at 107:5-15; *id.* at 108:4-6; *id.* at 108:23–109:1; *id.* at 111:1-13; *id.* at 115:13-25; *id.* at 117:3-5; ECF No. 201-6 at 99:14-24.

86.    Disputed as phrased.  Undisputed that the Opera and Armonia were capable of anchoring offshore and tendering passengers to shore in Punta Frances, but MSC Cruises S.A. was never given authorization to do so anywhere else in Cuba, including Havana.  ECF No. 210 ¶ 39.

87.    Disputed. Although MSC Cruises S.A. consulted with Cubanacan, MSC Cruises developed the shore excursions that MSC Cruises S.A. offered to its passengers who disembarked the Opera and Armonia at the Havana Port Terminal, and MSC Cruises vetted and approved its own shore excursions before offering them to passengers  *See* ECF No. 201-7 at 43:10-22, 51:3–52:11, 85:24–86:5. Moreover, to the extent this alleged fact addresses shore excursions offered in connection with Cuba-to-Cuba Cruises, it is not material to HDC's pleaded trafficking theory regarding Miami to Cuba cruises. *See* MSC Cruises' Obj. to Pleading a New Theory Through MSJ.

88.    Disputed as phrased.  Undisputed that the cited materials reflect that, on April 10, 2018, an employee of Cubanacan sent an email to MSC Cruises S.A. stating "find attached the file with the tour descriptions already approved by the MINREX."  ECF No. 201-7, at 87:13–88:2 (discussing ECF No. 202-46, MSCCUSA0000080203 at 204).   Disputed to the extent this fact suggests MINREX exclusively or customarily "approved" MSC Cruises' shore excursion descriptions, as MSC Cruises vetted and approved its own shore excursions before offering them to passengers, or that MINREX's review of shore excursions in any way altered MSC Cruises' shore excursions or affected their compliance with people-to-people requirements.  *See* ECF No. 201-7 at 43:10-22, 51:3–52:11, 85:24–86:5.

Dated: November 8, 2021                    Respectfully submitted,

                                           */s/ J. Douglas Baldridge*

                                           J. Douglas Baldridge (Fla. Bar No. 708070)
                                           Andrew T. Hernacki (admitted *pro hac vice*)
                                           Justin B. Nemeroff (admitted *pro hac vice*)
                                           VENABLE LLP
                                           600 Massachusetts Avenue
                                           Washington, D.C. 20001
                                           T: (202) 344-4703
                                           F: (202) 344-8300
                                           JBaldridge@venable.com
                                           ATHernacki@venable.com
                                           JBNemeroff@venable.com

                                           *Counsel for MSC Cruises*


## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2021, the foregoing was filed under seal with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being electronically served this November 8, 2021, on all counsel of record.

                                           */s/ J. Douglas Baldridge*