# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HAVANA DOCKS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION,<br><br>    Defendant.<br>_____/ | **Case No. 19-cv-21724**<br>**BLOOM/MCALILEY** |
| HAVANA DOCKS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>MSC CRUISES SA,<br>MSC CRUISES SA CO, and<br>MSC CRUISES (USA) INC.,<br><br>    Defendants.<br>_____/ | **Case No. 19-cv-23588**<br>**BLOOM/LOUIS** |
| HAVANA DOCKS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>ROYAL CARIBBEAN CRUISES, LTD.,<br><br>    Defendant.<br>_____/ | **Case No. 19-cv-23590**<br>**BLOOM/LOUIS** |
| HAVANA DOCKS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>NORWEGIAN CRUISE LINE HOLDINGS, LTD.,<br><br>    Defendant.<br>_____/ | **Case No. 19-cv-23591**<br>**BLOOM/LOUIS** |

**ORDER ON DEFENDANTS' MOTION TO CONFIRM INTEREST CALCULATION**
**PURSUANT TO 22 U.S.C. § 6082(a)(1)(B)**

**THIS CAUSE** is before the Court upon Defendants' Motion to Confirm Interest Calculation Pursuant to 22 U.S.C. § 6082(a)(1)(B)[1] (the "Motion"). Plaintiff filed a Response to the Motion,[2] to which Defendants filed a Reply.[3] The Court has reviewed the Motion, the Response and the Reply, the record in each case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

## I.　　BACKGROUND

The Court previously determined that Defendants are liable under Title III of the Helms-Burton Act ("Title III"), and the only issue that remains for jury trial is the appropriate award of damages. As set forth in the Court's Order on the Omnibus Report and Recommendation Regarding *Daubert* Motions ("*Daubert* Order"),[4] pursuant to the plain language of Title III, Plaintiff is entitled to recover the amount which is the greater of the certified claim, plus interest according to 22 U.S.C. § 6082(a)(1)(A)(i)(I), or the fair market value of the property according to § 6082(a)(1)(A)(i)(III). The fair market value is "calculated as being either the current value of the property, or the value of the property when confiscated plus interest[.]" 22 U.S.C. § 6082(a)(1)(A)(i)(III). The parties do not intend to put forth evidence regarding the value of the property when confiscated, and therefore, the fair market value is to be calculated solely as the current value of the property. Following the Court's *Daubert* Order, the expert permitted to provide testimony regarding the current value of the property is Pablo Spiller.

---

[1] *Carnival* ECF No. [513], *MSC Cruises* ECF No. [365], *Royal Caribbean* ECF No. [288], *Norwegian* ECF No. [398].

[2] *Carnival* ECF Nos. [520], *MSC Cruises* ECF Nos. [370], *Royal Caribbean* ECF Nos. [293], *Norwegian* ECF Nos. [403].

[3] *Carnival* ECF Nos. [529], *MSC Cruises* ECF Nos. [379], *Royal Caribbean* ECF Nos. [302], *Norwegian* ECF Nos. [416].

[4] *Carnival* ECF No. [526], *MSC Cruises* ECF No. [376], *Royal Caribbean* ECF No. [299], *Norwegian* ECF No. [413].

The text of Title III sets forth a presumption in favor of certified claims. There is a presumption that the amount of liability is the amount "that is certified as described in subclause (I) of [clause (i) of paragraph (1)(A)]." 22 U.S.C. § 6082(a)(2). However, "[t]he presumption shall be rebuttable by clear and convincing evidence that the amount described in subclause . . . (III) of that clause [in this case, the fair market value calculated as the current value of the property] is the appropriate amount of liability under that clause." 22 U.S.C. § 6082(a)(2) (the "Rebuttable Presumption").

In the Motion, Defendants request that the Court confirm three aspects of the interest applicable in the calculation of damages: 1) the rate; 2) whether the interest will be simple or compounded; and 3) whether the interest is trebled. Plaintiff agrees with Defendants' requests, although not their interpretation, and urges the Court to confirm the interest calculation. The requests require that the Court examine the precise language of the statute.

## II.   LEGAL STANDARD

With any question of statutory interpretation, the Court presumes that Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) (citing *United States v. Ron Pair Enterps., Inc.,* 489 U.S. 235, 241-42 (1989)) (further citations omitted). "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted); *see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (where "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation and citation omitted). "This is so because '[t]he plain language is presumed to express congressional intent and

will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002)) (alterations in the original). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And, "[w]hen interpreting a statute, words must be given their 'ordinary or natural' meaning[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) (citation omitted). Moreover, "[a] court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Moss*, 378 B.R. at 658 (quoting *Silva*, 443 F.3d at 798).

### III.  DISCUSSION

Defendants assert that the Court should confirm how it will calculate the applicable interest because that calculation will determine which amount is the greater amount, and thus, will impact the parties' presentation of evidence and potential settlement negotiations. Plaintiff asserts that, to present the jury with the damages sum in this case, the Court must compute the amount of interest to be added to the certified claim. However, the parties' assertions assume that the necessary showing in this case is that the fair market value of the property is greater than the amount of the certified claim *plus* interest. For the reasons that follow, the Court clarifies, as a preliminary matter, that the necessary showing in this case is that the fair market value of the property is greater than the amount of the certified claim *without* interest.

#### A. Damages under Title III

Title III provides that a person who traffics in confiscated property is liable to

> any United States national who owns the claim to such property for money damages in an amount equal to the sum of—
>
> (i)  the amount which is the greater of—

4

>> (I) the amount, if any, certified to the claimant by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949 [22 U.S.C. 1621 et seq.], plus interest;
>
> [. . .] or
>
> (III) the fair market value of that property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater[.]

22 U.S.C. § 6082(a)(1)(A). The Rebuttable Presumption provides that

> There shall be a presumption that the amount for which a person is liable under clause (i) of paragraph (1)(A) is the amount that is certified as described in subclause (I) of that clause. The presumption shall be rebuttable by clear and convincing evidence that the amount described in subclause (II) or (III) of that clause is the appropriate amount of liability under that clause.

22 U.S.C. § 6082(a)(2).

### i. The Presumption is in Favor of the Certified Claim without Interest

The first sentence of the Rebuttable Presumption states that "[t]here is a presumption that the amount for which a person is liable under clause (i) of paragraph (1)(A) is *the amount that is certified as described in subclause (I) of that clause*." 22 U.S.C. § 6082(a)(2) (emphasis added). Subclause (I) in turn states, "the amount, if any, certified to the claimant by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949 [22 U.S.C. 1621 et seq.], *plus interest*." 22 U.S.C. § 6082(a)(1)(A)(i)(I) (emphasis added). The "plus interest" under subclause (I) is not included in "the amount that is certified" by the Foreign Claims Settlement Commission. Thus, in a case where the Rebuttable Presumption applies, a jury is specifically tasked with determining whether a plaintiff has proven by clear and convincing evidence that the fair market value of the property is greater (and therefore the appropriate amount of liability under clause (i) of paragraph (1)(A)) than the amount of the certified claim not including interest. The interest under Title III is not an amount "certified" by the Foreign Claims Settlement Commission. The fair market value of the property calculated as the current value of the property also does not

5

include interest. *See* 22 U.S.C. § 6022(a)(1)(A)(i)(III). As such, this case does not require the jury to be informed of interest to be calculated under Title III, as neither of the amounts at issue and relevant to the Rebuttable Presumption includes interest.

Having clarified the requisite showing under the Rebuttable Presumption, the Court turns next to the parties' arguments regarding the applicable interest rate.

### B. Interest Rate

Regarding the interest rate, Title III provides that—

> Interest under subparagraph (A)(i) shall be at the rate set forth in *section 1961 of title 28*, computed by the court from the date of confiscation of the property involved to the date on which the action is brought under this subsection.

22 U.S.C. § 6082(a)(1)(B) (emphasis added); (the "Interest Provision"). Title III therefore directs the Court to 28 U.S.C. § 1961 for the applicable rate. Section 1961 states, in pertinent part, that

> Interest shall be allowed on any money judgment in a civil case recovered in district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgment recovered in the courts of the State. *Such interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment*. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(a) (emphasis added).

The parties agree that § 1961(a) provides the relevant interest rate for Title III, but they disagree with respect to how much of § 1961(a) should be read into the Interest Provision. Defendants argue that the applicable rate is the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Therefore, according to Defendants' interpretation, the applicable interest rate is anchored to the date of a future event—namely, a judgment, which in this case has not yet been entered.

6

Plaintiff responds that the rate under Title III is the "weekly average 1-year constant maturity Treasury yield," from "the date of confiscation of the property involved to the date on which the action is brought." 28 U.S.C. § 1961; 22 U.S.C. § 6082(a)(1)(B). Plaintiff's suggested interpretation of the statute does not include the "calendar week preceding[] the date of judgment" because Plaintiff argues that pre-filing interest, as opposed to prejudgment interest, must be calculated before there is a judgment. Plaintiff therefore contends that the portion of § 1961(a) that provides the rate relevant to Title III is the portion stating the "weekly average 1-year constant maturity Treasury yield," while the Interest Provision in Title III, and not § 1961, provides the applicable timeframe—from "the date of confiscation of the property involved to the date on which the action is brought." 22 U.S.C. § 6082(a)(1)(B). In effect, in Plaintiff's view, Title III and its reference to § 1961 in the Interest Provision mean that interest under Title III should be calculated using the weekly average 1-year constant maturity Treasury yield during the pre-filing period, which in this case spans approximately fifty-nine (59) years—from 1960 to 2019. Plaintiff argues further that Defendants' proffered interpretation of the applicable rate is incompatible with the operation of the Rebuttable Presumption because such an interpretation means the amount of damages is indeterminable until after a judgment is entered, and only after a jury verdict. Defendants contend that Plaintiff conflates the rate of interest, which is provided by § 1961, and the range of dates over which the interest is calculated, which is provided by Title III's Interest Provision.

Upon review, however, Defendants appear to conflate pre-filing interest and prejudgment interest. As Plaintiff correctly points out, the Interest Provision concerns pre-filing interest, stating that the applicable interest accrues "from the date of confiscation of the property involved to the date on which the action is brought[.]" 22 U.S.C. § 6082(a)(1)(B). To tether the applicable interest rate to a judgment that has not yet been rendered, as Defendants suggest, is incompatible with the

7

Rebuttable Presumption, and would result in an interpretation that is not harmonious with a reading of Title III as a whole. This incompatibility becomes clear when considering the alternate means of showing fair market value, as explained below.

### i. Fair Market Value Calculated at the Time of Confiscation Includes Interest

The Court previously concluded that a jury need not know the amount of interest in this case, where the fair market value is calculated as the current value of the property. However, in a case in which a plaintiff seeks to prove the fair market value calculated at the time of confiscation, a jury *would* be required to know the amount of interest to determine whether a plaintiff has met its burden under the Rebuttable Presumption. In that case, the fair market value explicitly *includes* the interest according to the plain language of subclause (III). 22 U.S.C. § 6082(a)(1)(A)(i)(III) ("the value of the property when confiscated *plus interest*") (emphasis added). A jury would therefore be tasked with determining whether the value of the property when confiscated plus the amount of pre-filing interest is greater than the amount of the certified claim. Interpreting the Interest Provision in the manner suggested by Defendants—with a rate determinable only with reference to a future event—would make it impossible to rebut the presumption when seeking to demonstrate that the fair market value, calculated as the value of the property when confiscated plus interest, is the more appropriate amount of liability.

Defendants' proffered interpretation would require the Court to ignore the requisite burden under the Rebuttable Presumption in a case in which the fair market value is the value of the property when confiscated, which, as already explained, includes interest. This the Court cannot do, since "[e]very word in a statute must be given meaning if possible, and a statute 'must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole.'" *Germain v. U.S. Att'y Gen.*, 9 F.4th 1319, 1325 (11th Cir. 2021) (quoting *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003)). To read the Interest Provision as

Defendants urge would result in an interpretation that is not harmonious with a reading of Title III as a whole.

As such, the Court agrees that Plaintiff's interpretation is in accordance with the plain language of Title III, and concludes that the applicable rate of interest is the weekly average 1-year constant maturity Treasury yield. However, contrary to Plaintiff's suggestion that the Court should apply "effective rates"[5] over the period between 1960 and 2019, the proper rate to be applied is the weekly average 1-year constant maturity Treasury yield for each week over the period between the date of confiscation and the date Plaintiff brought each of these actions against each Defendant.

Having resolved the applicable rate of interest, the Court turns to whether the interest is simple or compound.

### C. Simple or Compound Interest

Defendants argue that because the Interest Provision in Title III directs only that interest shall be at the *rate* set forth in § 1961 and is silent as to whether the rate should be applied as simple or compound, the Court should apply simple interest. Plaintiff responds that Title III relies on § 1961 to provide both the rate of interest and the method of calculation. As such, Plaintiff argues that interest should compound pursuant to § 1961(b), which provides that "[i]nterest shall be computed daily to the date of payment . . . , and shall be compounded annually." In essence, the parties again disagree with respect to how much of § 1961 is incorporated into Title III, by virtue of the reference contained in the Interest Provision.

---

[5] According to Plaintiff, the "effective rate" is the actual annual interest rate, which incorporates compounding when calculating interest, rather than the stated rate or coupon rate. *See* Response at 6 n.8 (quoting Black's Law Dictionary (10th ed. 2014)). However, because the Court determines that compounding is not warranted, *see infra* Section III.C., the Court will not apply a rate that incorporates compounding. Moreover, neither Title III nor § 1961 refer to an "effective rate," and thus the application of an "effective rate" is not supported by the plain language of Title III.

9

The relevant language from the Interest Provision states that "[i]nterest under subparagraph [(1)](A)(i) shall be at the rate set forth in section 1961 of title 28[.]" 22 U.S.C. § 6082(a)(1)(B). Defendants argue that the reference specifically to the "rate set forth in § 1961" means that the only portion of § 1961 incorporated into Title III is the portion of § 1961(a) that speaks of the "rate equal to the weekly average 1-year constant maturity Treasury yield."[6] Plaintiff urges the Court to read the Interest Provision's incorporation of § 1961 broadly to encompass § 1961 in its entirety, including the provision for compounding in subsection (b).

The Court finds the plain language of the statute to be controlling, and therefore, the only portion of § 1961 incorporated into the Interest Provision is the rate from § 1961(a). Title III specifically references the *rate* set forth in section 1961 of title 28, and nothing more. Indeed, incorporating § 1961(b) into Title III would conflict with the Interest Provision because each provides for different timeframes over which interest is to be computed. Title III specifies that interest is to be "computed by the court from the date of confiscation of the property involved to the date on which the action is brought," which ends the amount of time over which interest accrues at the date the action is brought; while § 1961(b) specifies that "[i]nterest shall be computed daily to the date of payment," which contemplates continuing accrual of interest until such time as a judgment is paid. *Compare* 22 U.S.C. § 6082(a)(i)(B) *with* 28 U.S.C. § 1961(b). The language of § 1961(b), which applies to post-judgment interest, is inconsistent with the Interest Provision in Title III, which concerns pre-filing interest. Moreover, the only portion of § 1961 that explicitly references a rate is a portion of subsection (a), and thus the Court does not read the plain language of Title III to incorporate anything more than rate, which is explicitly set out in § 1961(a). *See*

---

[6] As the Court previously notes, Defendants argue further that the rate should include the reference to the calendar week preceding the date of the judgment, but the Court has rejected the inclusion of that language in the rate under the Interest Provision. *See supra,* Section III.B.

*Carriers Container Council, Inc. v. Mobile S.S. Assoc., Inc.*, 948 F.2d 1219, 1225 (11th Cir. 1991) (in statute stating that the *rate* of interest is determined by one section, the compounding method or formula contained in another statutory section was inapplicable).

Defendants argue that because Title III is silent as to whether interest is simple or compound, that silence should be interpreted to require simple interest. Plaintiff responds that even if Title III is silent, compounding interest is proper nevertheless because it is the "norm" in federal litigation. Here again, the Court finds the plain language of Title III to be dispositive.

Indeed, the statute the Interest Provision references—28 U.S.C. § 1961—provides for the compounding of interest in its current form, and that statute did so at the time the Helms-Burton Act was enacted. *See* Pub. L. No. 164, § 302, 96 Stat. 25 (1982). However, the Interest Provision specifically limits its reference to § 1961 to the "rate set forth in section 1961." 22 U.S.C. § 6082(a)(1)(B). "Congress is presumed to know the content of existing, relevant law, and . . . where Congress knows how to say something but chooses not to, its silence is controlling." *Griffith v. United States,* 206 F.3d 1389, 1394 (11th Cir. 2000) (quotation marks, citations, and alterations omitted). Thus, if Congress had intended for interest under Title III to compound, it could have provided so by not limiting its incorporation of § 1961 to the "rate set forth in section 1961." Therefore, interest under Title III does not compound. This conclusion is consistent with the general principle that "adoption by one statute of the specific provisions of another statute references the second statute as it existed at the time of the adoption, absent an expression to the contrary." *Carriers Container Council, Inc.*, 948 F.2d at 1225.

Accordingly, the Court concludes that interest under Title III is simple and not compound.

### D.  Trebling

Title III provides for increased liability in cases like this one, which involve a claim certified by the Foreign Claims Settlement Commission. *See* 22 U.S.C. § 6082(a)(3)(A). The

statute states, in pertinent part, that the damages in such a case are "money damages in an amount equal to the sum of . . . [court costs and attorney's fees] and 3 times the *amount* determined applicable under paragraph (1)(A)(i)." 22 U.S.C. § 6082(a)(3)(C)(ii) (the "Trebling Provision") (emphasis added). Defendants argue that the interest awarded under Title III should not be subject to trebling under this provision because the "amount" to which the Trebling Provision applies is the amount of the certified claim only, and not the interest.[7] Plaintiff responds that the plain text of Title III provides that where the "amount" determined to be applicable, i.e., greater, under paragraph (1)(A)(i) is the certified claim plus interest under subparagraph (I), a plaintiff is entitled to three times the amount of the certified claim and the interest together.[8]

Upon review, the Court agrees that the plain language of the statute applies the Trebling Provision to the claim <u>and</u> the interest. The Trebling Provision specifically refers to the "amount" determined to be applicable under paragraph (1)(A)(i). 22 U.S.C. § 6082(a)(3)(C)(ii). To reiterate, paragraph (1)(A)(i) states that the person who traffics in confiscated property shall be liable to

> any United States national who owns the claim to such property for money damages in an amount equal to the sum of—
>
> **(i) the *amount* which is the greater of—**
>
> > (I)  the amount, if any, certified to the claimant by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949 [22 U.S.C. 1621 et seq.], plus interest;
> >
> > [. . .] or
> >
> > (III) the fair market value of that property, calculated as being . . . the current value of the property . . . .

---

[7] According to Defendants, the Trebling Provision would result in damages calculated as follows:
(Amount of the certified claim x 3) + interest

[8] According to Plaintiff, the Trebling Provision would result in damages calculated as follows:
(Amount of the certified claim + interest) x 3

22 U.S.C. § 6082(a)(1)(A) (emphasis added). In Defendants' suggested reading, the term "amount" referred to in the Trebling Provision is the amount in paragraph (1)(A)(i)(I), but the flaw in Defendants' reading is that the "amount" to which the Trebling Provision applies is the "amount" in paragraph (1)(A)(i), not (1)(A)(i)(**I**). The "amount" in paragraph (1)(A)(i) includes both (1)(A)(i)(**I**) (amount of the certified claim plus interest) and (1)(A)(i)(**III**) (fair market value). In this case, the amount subject to trebling could be either the certified claim plus interest under paragraph (1)(A)(i)(I), or the current value of the property under paragraph (1)(A)(i)(III)—depending on which is greater—because as the Court has previously determined, a plaintiff is always entitled to recover the greater amount under paragraph (1)(A)(i). *See Daubert* Order at 11. Here, if the jury finds that the current value of the property is greater than the certified claim, then the "amount" to which the trebling would apply would be the current value of the property under paragraph (1)(A)(i)(III). However, if Plaintiff does not rebut the presumption in favor of the certified claim by meeting the burden of proving by clear and convincing evidence that the current value of the property is greater than the amount of the certified claim, then the "amount" to which the Trebling Provision applies is the certified claim plus interest under paragraph (1)(A)(i)(I).

Because the Court finds that the plain language of the statute is dispositive, no further analysis is necessary or proper. *See Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 (11th Cir. 1989), *certified question answered*, 559 So. 2d 1128 (Fla. 1990) ("Thus, the cardinal rule of statutory construction is that '[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'") (quoting *Streeter v. Sullivan*, 509 So. 2d 268, 271 (Fla. 1987) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (1931))).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, *Carnival* **ECF No. [513]**, *MSC Cruises* **ECF No. [365]**, *Royal Caribbean* **ECF No. [288]**, *Norwegian* **ECF No. [398]**, is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 31, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record