# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**Case No. 19-cv-21724**
**BLOOM/MCALILEY**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

MSC CRUISES SA,
MSC CRUISES SA CO, and
MSC CRUISES (USA) INC.,

    Defendants.
_____/

**Case No. 19-cv-23588**
**BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

**Case No. 19-cv-23590**
**BLOOM/LOUIS**

HAVANA DOCKS CORPORATION,

    Plaintiff,

v.

NORWEGIAN CRUISE LINE HOLDINGS, LTD.,

    Defendant.
_____/

**Case No. 19-cv-23591**
**BLOOM/LOUIS**

**ORDER ON DEFENDANTS' MOTION TO CONFIRM
THE APPLICABILITY OF THE "ONE-SATISFACTION RULE"**

**THIS CAUSE** is before the Court upon Defendants' Motion to Confirm the Applicability of the "One-Satisfaction Rule"[1] (the "Motion"). Plaintiff filed a Response to the Motion,[2] to which Defendants filed a Reply.[3] The Court has reviewed the Motion, the Response and the Reply, the record in each case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural background of this case. In the instant Motion, Defendants request that the Court confirm the application of the one-satisfaction rule, such that Plaintiff will be entitled to recover the amount of its alleged loss only once, as opposed to four separate times against each of the Defendants. Plaintiff opposes the request and argues that the one satisfaction rule does not apply.

## II. APPLICABLE LAW

The one satisfaction rule "generally provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." *BUC Int'l Corp. v. Int'l Yacht Council, Ltd.*, 517 F.3d 1271, 1276 (11th Cir. 2008). "The one-satisfaction rule, however, is not invoked as a counterdemand, but rather as an equitable doctrine designed to prevent multiple recoveries by a plaintiff on its own claim and for a single injury." *Id*. at 1276 n.5.

---

[1] *Carnival* ECF No. [524], *MSC Cruises* ECF No. [375], *Royal Caribbean* ECF No. [298], *Norwegian* ECF No. [412].

[2] *Carnival* ECF Nos. [536], *MSC Cruises* ECF Nos. [386], *Royal Caribbean* ECF Nos. [309], *Norwegian* ECF Nos. [423].

[3] *Carnival* ECF Nos. [538], *MSC Cruises* ECF Nos. [388], *Royal Caribbean* ECF Nos. [311], *Norwegian* ECF Nos. [425].

### III.  DISCUSSION

In support of their contention that the one satisfaction rule should apply, Defendants' arguments are premised upon the assertion that there is a single injury in these cases—Plaintiff not being compensated for the value of its interest in the subject property. In response, Plaintiff asserts three main arguments: (1) Defendants' request is not yet ripe because no damages have been awarded; (2) the text of the LIBERTAD Act forecloses the application of equitable defenses such as the one satisfaction rule; and (3) the one satisfaction rule does not apply because there has been no satisfaction, Defendants are not joint tortfeasors or jointly and severally liable, Defendants mischaracterize the nature of Plaintiff's injury, and the one satisfaction rule does not apply to punitive damages. Because the nature of the injury is dispositive to the issue presented, the Court considers it first.

**A.  Each Defendants' trafficking constitutes a separate injury to Plaintiff**

Defendants contend that Plaintiff seeks to recover for the same injury, asserting that the Court has held that Plaintiff's injury "is the singular loss of the value of its property interests, and its unsatisfied right to be compensated for the expropriation of those interests." Motion at 6-7 (citing *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1228 (S.D. Fla. 2020)). Indeed, Defendants rely upon the Court's previous order on NCL's motion to dismiss, in which the Court agreed with Plaintiff "that a favorable decision would directly redress its injury by compensating Plaintiff for the value of its interests in the Subject Property that were confiscated," and stated that Plaintiff's "injury is 'real' because it is not receiving the benefit of its interest in the Subject Property." *Id*. Defendants also point to additional language from the Court's order on Plaintiff's motion for reconsideration in *MSC Cruises*, to highlight that the Court recognized that Plaintiff's sole remaining property interest is a certified claim reflecting the right

3

to be compensated for the expropriation. *Id*. at 7.[4]

Plaintiff responds that Defendants mischaracterize the nature of its injury. While Plaintiff does not dispute that the confiscation carried out by the Cuban Government caused injury, it disagrees that the injury caused by the Cuban Government is the same as the injury caused by Defendants' trafficking. In Plaintiff's view, its injury in these cases arises from Defendants' trafficking, and each time one of the Defendants trafficked, Plaintiff was deprived of the "gains produced by exploiting property that is rightfully" Plaintiff's. Response at 16 (quoting *Sucesores de Don Carlos* Nunez, --- F. Supp. 3d ----, 2021 WL 6065758, at *7-8 (S.D.N.Y. Dec. 22, 2021)). As such, Plaintiff contends that the harm is not single and indivisible as Defendants argue; rather, the harm occurred separately when each of the Defendants independently exploited the property without Plaintiff's consent and without compensating Plaintiff. In support of its position, Plaintiff also points to this Court's previous acknowledgment—at the summary judgment stage—that Plaintiff "alleges an injury that is entirely separate from the confiscation of its property rights by the Cuban Government." *Havana Docks Corp. v. Carnival Corp.*, --- F. Supp. 3d ----, 2022 WL

---

[4] Defendants highlight the following specific language from the Court's order in *MSC Cruises*:

> [I]n lieu of its property interest in the remaining 44 years of the concession to the Subject Property, which the Cuban Government confiscated, Plaintiff now owns an interest only in the Certified Claim, which reflects the right to compensation for the value of loss Plaintiff sustained due to the expropriation.
>
> [. . .]
>
> [O]btaining a claim certified by the FCSC allows the victim of such a confiscation to memorialize the ***value*** of the property interest lost and to put other actors on notice of the victim's outstanding right to compensation based on the now-extinguished property interest taken. This certified claim is ***not*** an interest in the confiscated property itself; rather, it represents the dollar amount that the victim has suffered by being deprived of its property interests . . . .

*Havana Docks Corp. v. MSC Cruises SA Co.*, 455 F. Supp. 3d 1355, 1368-69 (S.D. Fla. 2020) (emphasis in original).

831160, at *80 (S.D. Fla. Mar. 21, 2022).

Upon review, the Court agrees that Defendants' characterization of the injury is inaccurate. Properly viewed, Plaintiff, like any other Title III plaintiff, has sustained two distinct types of injuries—(1) confiscation of its property by the Cuban Government, and (2) subsequent trafficking in that confiscated property by Defendants. Defendants' proposed interpretation of injury conflates the two types by asserting that the harm caused by each is the same—namely the loss of the value of Plaintiff's property interest. However, the fact that Title III quantifies both types of injuries by the amount of the certified claim does not mean that the injuries are the same. Defendants point to no authority that persuasively supports such a proposition.

Furthermore, Defendants' argument that the injury in this case is the loss of the value of the interest in Plaintiff's confiscated property is irreconcilable with the plain language of Title III. Title III explicitly seeks not only to compensate plaintiffs for the loss of their property interests due to the Cuban Government's confiscation, but also to deter third parties from benefitting from the Cuban Government's unjust confiscations. Indeed, the Helms-Burton Act states as one of its purposes, "to protect United States nationals against confiscatory takings ***and the wrongful trafficking*** in property confiscated by the Castro regime." 22 U.S.C. § 6022(6) (emphasis added). Title III recognizes that "[t]he international judicial system, as currently structured, lacks fully effective remedies for the wrongful confiscation of property ***and for unjust enrichment from the use of wrongfully confiscated property*** by governments and private entities at the expense of the rightful owners of the property." 22 U.S.C. § 6081(8) (emphasis added). Title III further recognizes that "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would **deny *traffickers* any profits from economically exploiting Castro's wrongful seizures**." 22 U.S.C. § 6081(11). Title III therefore imposes liability specifically "for

5

**trafficking** in confiscated property claimed by United States nationals." 22 U.S.C. § 6082 (emphasis added). As such, Defendants' assertion that there is only one single indivisible injury in this case is not supported by the language of the statute.

In arguing that the Court should view these cases as involving one injury to Plaintiff, Defendants highlight that the Court has held, and Plaintiff agrees, that a Title III claim is "closely 'analogous to common law tort claims.'" *See* Motion at 3 (quoting Case No. 19-cv-23591 ("*NCL*"), ECF No. [357]). Defendants emphasize the Court's explanation—in the context of deciding whether Plaintiff is entitled to a jury trial—that "Plaintiff must prove Defendants' duty to refrain from trafficking on the Subject Property, Defendants' breach of that duty, and Plaintiffs' damages," to support their argument that the Court should apply the same reasoning in this case as in any other tort case in which a plaintiff cannot recover multiple times for a single injury. But Defendants read too much and too far.

The Court has not held that Plaintiff's claims are "closely" analogous to anything. Specifically, the Court made the following statements with respect to Plaintiff's claims in the context of determining that the jury trial demand would not be stricken:

> As the R&R correctly notes, none of the common law tort claims is an exact match to the claim under the Act, but elements of each resemble the claim in questions such that the claim *could be* considered analogous to common law tort claims.
>
> [. . .]
>
> [T]he specific issues that must be tried – which are the focus of the Court's analysis – indicate that the claim being adjudicated is analogous to common law tort claims.

*Id*. at 7-8 (emphasis added). That the Court drew an analogy to tort claims for the purpose of resolving the right to a jury trial in these cases does not mean every aspect of a Title III claim should be viewed in the same manner as a common law tort claim, as Defendants suggest. Moreover, Defendants' assertion appears to be inconsistent with their previous arguments in

6

objecting to the Magistrate Judge's recommendation regarding the right to a jury trial, where Defendants urged the Court to view Plaintiff's claims as materially different from traditional tort claims. *See NCL*, ECF No. [350] at 3-9.

Further, contrary to Defendants' contention, *BUC International Corp*. is not similar or analogous to Title III cases. *BUC International* involved claims of copyright infringement against six defendants in the development of a web-based multiple listing service ("MLS") for yachts. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd*., 489 F.3d 1129, 1133-35 (11th Cir. 2007) ("*BUC I*"). Each defendant in *BUC International* contributed in some way to a single injury to the plaintiff—the creation of an infringing MLS. *Id*. at 1136-37. Some of the defendants settled, and after a jury found the other defendants liable, the non-settling defendants requested that the final judgment be reduced by the settlement amounts obtained from the settling defendants pursuant to the one satisfaction rule. *BUC Int'l Corp*., 517 F.3d at 1273 ("*BUC II*"). The Eleventh Circuit in *BUC II* specifically found that the one satisfaction rule applies to infringement actions under the Copyright Act, and that it applied to the facts in the case before the court. *See id*. at 1278. But Plaintiff's Title III claims are not similar to copyright infringement claims, nor are the facts of these cases similar to the facts in *BUC International*. Unlike the defendants in *BUC International*, Defendants here did not contribute to one single act of trafficking. Rather, as the Court determined at summary judgment, each participated in separate acts of trafficking at different times that give rise to separate violations of Title III.

Moreover, as the Eleventh Circuit explained in *BUC II*, "[t]he one-satisfaction rule . . . operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury." *Id*. at 1277. For the reasons already explained, the Court does not agree that Plaintiff has sustained a single injury in this case.

This conclusion is consistent with the Eleventh Circuit's further observation in *BUC II* that

the one satisfaction rule "is not a right created to protect defendants, but to limit plaintiffs." *Id*. at 1278. Indeed, while viewing the injury in this Title III case as single and indivisible such that the one satisfaction rule should apply would certainly limit Plaintiff; it would also allow Defendants to minimize their liability in a manner not permitted by the plainly stated deterrent purpose of Title III. Taken to its logical extreme, Defendants' interpretation would prevent Plaintiff from recovering for future acts of trafficking by others. Title III contains no such limitation.

### B.  Title III does not otherwise support the application of the one satisfaction rule

Defendants nevertheless argue that Title III supports the application of the one satisfaction rule, because allowing Plaintiff to recover separately from each Defendant would constitute double recovery, which Title III does not permit. Specifically, Defendants point to the portion of Title III providing for an election of remedies. *See* 22 U.S.C. § 6082(f). In pertinent part, Title III states that

> [I]f the recovery in the [Title III] action is equal to or greater than the amount of the certified claim, the United States national may not receive payment on the claim under any agreement entered into between the United States and Cuba settling claims covered by such title, and such national shall be deemed to have discharged the United States from any further responsibility to represent the United States national with respect to that claim.

22 U.S.C. § 6082(f)(2)(A)(i). This provision, however, does not support Defendants' position. Rather, this provision shows that Title III seeks to prevent double recovery from both traffickers and the Cuban Government—but not multiple recoveries from traffickers. Given Title III's dual purpose of providing remedies for wrongful confiscation of property and deterring trafficking in wrongfully confiscated property, the Court does not read this provision to cap Plaintiff's recovery to the amount of its certified claim. Rather, the provision acknowledges that the recovery in a Title III action may be "equal to ***or greater*** than the amount of the certified claim." *See id*. In that instance, Title III provides that a claimant may not receive any additional payment under any

8

potential agreement reached between the United States and Cuba, but does not otherwise state that a plaintiff may not separately recover under Title III against each trafficker. Thus, the plain language of this provision does not support Defendants' arguments for application of the one satisfaction rule.

Defendants also point to the provisions of Title III that prevent plaintiffs from bringing any other actions seeking compensation for the same claim upon another basis or in another forum. The pertinent provisions state:

> (A) any United States national that brings an action under this section may not bring any other civil action or proceeding under the common law, Federal law, or the law of any of the several States, the District of Columbia, or any commonwealth, territory, or possession of the United States, that seeks monetary or nonmonetary compensation by reason of the same subject matter; and
>
> (B) any person who brings, under the common law or any provision of law other than this section, a civil action or proceeding for monetary or nonmonetary compensation arising out of a claim for which an action would otherwise be cognizable under this section may not bring an action under this section on that claim.

22 U.S.C. § 6082(f)(1)(A), (B). Again, the Court does not read those provisions to support Defendants' suggestion that Title III caps or limits Plaintiff's recovery for trafficking. Similar to the first provision Defendants rely upon, those provisions do not state that a plaintiff may not separately recover under Title III against each trafficker.

Nor would such a reading of any of the provisions relied upon by Defendants be warranted in any event, since "a statute 'must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole.'" *Germain v. U.S. Att'y Gen.*, 9 F.4th 1319, 1325 (11th Cir. 2021) (quoting *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003)). To read Title III in the manner Defendants suggest undermines the statute's explicit deterrent purpose and contravenes its explicit imposition of liability upon any person who traffics in confiscated property.

### IV.     CONCLUSION

Because the Court concludes that the plain language of Title III does not support Defendants' characterization of Plaintiff's injuries in these cases, or the application of the one satisfaction rule, the Court does not consider the additional arguments raised in Plaintiff's Response.

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, *Carnival* **ECF No. [524]**, *MSC Cruises* **ECF No. [375]**, *Royal Caribbean* **ECF No. [298]**, *Norwegian* **ECF No. [412]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 31, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record